Loeb v. Stern.

---

**Sidney Loeb et al. v. Fredericka Stern, Adm'x, etc.**  

99  637
a198s 371

1. CONTRACT— *When an Agreement to Repurchase a Note and Mortgage is Not a Gambling Transaction, within the Prohibition of Section 130 of the Criminal Code.*—An agreement by the seller of a promissory note and mortgage to take them back at par and accrued interest, less one per cent commission, on thirty days' notice, made contemporaneous with the purchase and a part of the same transaction, is not an option contract within the prohibition of section 130 of the criminal code.

2. DEMAND— *Where Unnecessary.*—Where a party obligates himself to comply with the conditions of an agreement upon demand and notice,

and upon notice he refuses to perform his undertaking, no further
demand is necessary.

3. ESTOPPEL—*Foreclosure by a Purchaser of a Mortgage Under an
Agreement Giving the Privilege of Returning it.*—The purchaser of a
note and mortgage under an agreement on the part of the seller to
repurchase them, is not estopped by the foreclosure of the mortgage
from claiming damage for the breach of the agreement to repurchase
such note.

4. VENDOR AND VENDEE—*When it is the Duty of a Vendor to Real-
ize as Much as Possible from a Sale of the Property in Question.*—The
ground upon which a party is required to sell upon the market the
goods which a vendee refuses to receive in conformity with his agree-
ment to take them, before seeking substantial damages for the breach
of the contract, is the duty of the vendor to realize all that he reason-
ably can, upon the goods, and thus lessen so far as he possibly can
the damages resulting from the breach of the agreement, and this
duty is well discharged by the reasonable efforts of the purchaser of a
note secured by a mortgage, under an agreement on the part of the
seller to repurchase it under certain circumstances, to realize all he can
upon the note by foreclosure and sale of the mortgaged premises, unless
it appears that by the sale of the note upon the market a greater reduc-
tion of the damages could be accomplished.

5. PARTIES—*When Not Competent Witnesses in Civil Suits.*—No
party to any civil action, suit or proceeding, or person directly inter-
ested in the event thereof, is allowed to testify in such suit or proceed-
ing of his own motion, or in his own behalf, when any adverse party
sues or defends as the executor, administrator, heir, legatee or devisee
of any deceased person.

6. FORECLOSURE SALES—*Price at Which the Property Sells, the Con-
clusive Measure of its Value.*—In the absence of fraud or irregularity in
the proceedings, the price for which property sells at a sale in foreclos-
ure is the conclusive measure of its value as a security for the notes
mentioned in the mortgage.

**Assumpsit.**—Breach of an agreement to repurchase notes, etc.
Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE
HANECY, Judge, presiding. Heard in this court at the March term,
1901. Affirmed. Opinion filed January 30, 1902.

**Statement.**—One Glaser, as agent of Marcus Stern,
appellee's testator, purchased from appellants a promissory
note and interest notes, secured by trust deed upon prop-
erty in this county. At the time of the purchase the fol-
lowing letter, directed to Stern, was given to the agent,
Glaser, by appellants:

" DEAR SIR:   We herewith hand you first mortgage of

F. D. & C. D. Hess, dated November 28, 1892, for the amount of $6,500, which, with accrued interest to date, amounts to $6,588.69, for which we received check from Mr. G. D. Glaser, of this city, on your account. We hereby guarantee that the trust deed securing the payment of principal and interest notes which we hand you herewith, is a first lien upon the property covered in said deed and that the title to said property is good in said F. D. & C. D. Hess, and agree to protect you from any loss which might arise from any defect in said title. We also guarantee you the completion, free from all mechanics' liens, of the four-story stone front store and flat building, which is now in process of completion upon said premises, and which is known as No. 6504 State street. We will also see to it that the taxes are paid on said property during the term of loan and that the building will remain insured for an amount of no less than $6,500 during said time, which insurance policies we will hold as collateral security of the loan for your benefit. We also hold abstract of title, and agree furthermore to take this mortgage back at par and accrued interest, less one per cent commission, provided you give us thirty days' notice to such effect in writing.

Very respectfully yours,<br>LOEB & GATZERT."

The purchase and contemporaneous agreement to buy back were made February 20, 1893.

On August 10, 1896, which was more than three years after the purchase, Marcus Stern caused to be served upon appellants the following notice:

" ATLANTIC CITY, NEW JERSEY, 8–7–96.
MESSRS. LOEB & GATZERT,
Chicago, Illinois.

GENTLEMEN : In accordance with the provision in that respect contained in your writing of February 20, 1893, wherein you agree to take back the note of $6,500 and trust deed of Frederick D. and Caroline D. Hess at par and accrued interest less one per cent commission, I do hereby give you notice that I desire to avail myself of the benefits of said provision and do hereby notify you to take back said note and trust deed, in accordance with the terms of said provision, thirty days after receipt of this notice by you, and I hereby authorize C. D. Glaser to receive the amount of said note and interest, less commission, for me.

Truly yours,<br>MARCUS STERN."

Appellant Gatzert testified that the following conversation took place at the time of the service of said notice by Glaser:

" I told him that we would not buy it back, because at the time he bought this mortgage I told him I would make this agreement simply because his father-in-law was coming to the World's Fair in 1893, and he wanted to look at the property then, and, if it did not suit him, I would then take the mortgage back. We would take the mortgage back. For that reason there was an understanding in the nature of our agreement, and I told him we were not compelled to take back that mortgage. Mr. Glaser said, ' Well, I simply serve you with this notice.' That is all he said. He said, ' I have nothing to say; I serve you with this notice.' "

Appellant Loeb testified :

" I remember the conversation with Glaser which Mr. Gatzert had at that time. He came in and presented that letter from Mr. Stern and said he wanted his money. I was present and we were very much surprised to see him coming in after owning the mortgage three years. We told him that that was not the intent of that letter; that he told us at the time he bought the mortgage that he would not ask it of us, but that he was buying it for his father-in-law; that his father-in-law would be here during the World's Fair and he would take him out and show him the property, and we agreed to take it back if his father-in-law did not like it at that time. Instead of that, he keeps the mortgage for three years. We told him that we would not take it back. He said he would see about it and went out of the office. He wanted his money. That is all he said."

After the service of this notice and the conversations above noted, Glaser took the notes and trust deed to an attorney, with instructions to proceed to foreclose it.

No demand was made upon Loeb & Gatzert on or after the expiration of the thirty days provided in the notice. Subsequently Marcus Stern died, and after his death the administratrix of his estate filed a bill to foreclose the trust deed.

No notice was given to appellants of the filing of this bill, but appellant Gatzert, who was the trustee named in

Loeb v. Stern.

the trust deed, was made a party defendant to the foreclosure proceedings. After the sale in the foreclosure proceedings and the entry of a deficiency decree in said proceedings against the mortgagors, appellee brought this suit in assumpsit to recover for breach of the contract of appellants to purchase the notes. An execution to enforce the deficiency decree was returned " no property found."

Appellants defended upon the following grounds :

1. That no time being mentioned in the original agreement within which the security might be returned, such security should have been returned within a reasonable time, and that three years after the making of the contract was not a reasonable time.

2. That no demand upon the defendants or tender of the securities was ever made on or after the expiration of the thirty days provided in the letter of August 7, 1896.

3. That plaintiff waived her demand against the defendants by electing to retain the securities and foreclose same.

4. That the letter of February 20, 1893, constituted a contract contrary to the provisions of the statute, and was therefore void.

Upon the trial the court refused to permit appellants to testify as to the conversations had at the time of the writing of the letter of February 20, 1893, between Mr. Gatzert and Mr. Glaser, which were offered for the purpose of showing what the parties at the time considered a reasonable time within which to exercise the option given to Marcus Stern in which to return the securities.

The court also refused to give any of the instructions offered on behalf of the defendants, but peremptorily instructed the jury at the close of the case to find the issues for the plaintiff and to assess the plaintiff's damages at $1,022.73, which was the amount of the deficiency decree, less one per centum of the amount of the notes. From judgment upon a verdict for that amount this appeal is prosecuted.

LOEB & ADLER, attorneys for appellants.

PENCE & CARPENTER, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

It is contended by the learned counsel for appellants that the agreement by which appellants undertook to buy back the mortgage notes in question at the election of Marcus Stern, is an option contract within the prohibition of section 130 of the criminal code. This contention can not, we think, be sustained. The contract to buy back was contemporaneous with the purchase by Stern and part of the same transaction. The decision of the Supreme Court in Wolf v. National Bank, 178 Ill. 85, is in point and controlling. See, also, Ubben v. Binnian, 182 Ill. 508.

It is contended that because no demand was made upon appellants to carry out the terms of the contract to repurchase after the expiration of the thirty days named in the notes, therefore no recovery could be had. We regard this contention as untenable. Upon receiving the notice of Stern's election to have appellants perform their undertaking to repurchase, the appellants expressly notified Stern's agent that they would not perform. This dispensed with need of any further demand. The law does not require the needless formality of demand in such case, it being apparent from the declaration of the parties that a demand would be unavailing. Wight v. Gardner, 66 Ill. 94; Lyman v. Gedney, 114 Ill. 388; Gorham v. Farson, 119 Ill. 425.

It is also contended that the rights of Stern under the contract were waived when his representative proceeded to a foreclosure of the trust deed by which the notes in question were secured. We are of opinion that the action of appellee in foreclosing the trust deed did not operate to estop her from claiming damages for breach of the contract to repurchase the notes. Assuming that contract to have been a valid and enforceable contract, and that appellants, upon their refusal to perform, became liable to appellee for breach of it, how was appellee to establish her measure of damages? If, upon the refusal of appellants to repurchase, she had at once brought suit for breach of the contract, her claim to any substantial damages would doubt-

less have been met by the answer of appellants that until she had enforced payment of the notes or disposed of them by sale, it could not be known that she was damnified in any substantial manner, and hence that she could recover nominal damages only. It was the duty of appellee to take such action as might be reasonably calculated to reduce the damages resulting from appellants' breach of the contract. Appellants refused to take back the notes. If they were to be enforced at all by foreclosure of the trust deed, it was for appellee to take this means of realizing upon them. In so doing she was, presumably, getting all out of the notes which could be realized by subjecting the land security to their payment, and to that extent she was by prompt action presumably decreasing the damages for which appellants were liable. We are unable to perceive any substantial difference between such action and the ordinary sale upon the market of goods which a contracting party should, but will not, receive in compliance with his contract to buy. In either case it is simply the effort of the party damaged by breach of the contract to make the damages as slight as possible.

We think that there is no merit in the contention of counsel that appellee should have sold the notes upon the market in order to establish the measure of her damages. The ground upon which a vendor is required to sell upon the market the goods which the vendee refuses to receive in conformity with his contract, before seeking substantial damages from such vendee for breach of the contract to buy, is the duty of the vendor to realize all that he reasonably can upon the goods, and thus lessen, in so far as he reasonably can, the damages resulting from the breach of the contract. This duty would be as well met by the reasonable efforts of appellee to realize all that she could upon the notes by foreclosure, as by sale of the notes, unless it appeared that by the latter method a greater reduction of the damages could be accomplished. The underlying reason and purpose of the rule is the reduction of the loss. In Sutherland on Damages, page 155, the author says:

" Where damages can thus be saved by timely preventive measures, taken by the injured party, it is his *duty* to exert himself for that purpose; but he has a correlative *right*, in similar cases, to employ other means to attain the object of the contract broken, which was within the contemplation of the parties at the time of contracting; or to extricate himself from any predicament in which the wrong complained of may have placed him."

It does not appear from the evidence that at the time of the breach of the contract the notes could have been sold upon the market, or that by sale of them, or in any other manner, appellee could have further reduced the damages caused by the breach of appellants' contract. At the time of appellants' refusal to repurchase, one of the interest notes was overdue and unpaid. It would seem very doubtful if such paper could have been sold upon the market, except at a sacrifice, and that it could have been sold at all is problematical. There is no evidence to warrant a conclusion that it could.

Counsel also contend that parol evidence should have been admitted to show that the time within which the election of appellee to re-sell the notes to appellants should be exercised, was limited, and that the right had expired by such limitation before appellee sought to enforce it. In this behalf it was sought to show that by oral agreement the time was, in effect, limited to the time of a proposed visit of Marcus Stern to the city of Chicago, he being a non-resident of that city. The written contract contains no limitation of time within which the option was to be acted upon. It is also urged that the time for the exercise of the option would be, in the absence of express provision in the written agreement, a reasonable time, and that to establish what was a reasonable time it was competent to show what the parties themselves regarded as a reasonable time by showing their conversations in relation thereto at the time of the making of the written agreement.

It is enough to say of these contentions that if it was proper to allow any showing in this behalf to be made, yet no competent evidence was presented by appellants by which any such facts could be established.

The mere statements by appellants to Glaser as to what they told Glaser at the time of the service of the notice upon appellants, being after the written agreement was made, could not establish these facts. Nor were appellants competent witnesses by whom to prove what was said by them and by Glaser at the time of the making of the original contract in writing. This suit was brought by appellee as administratrix with the will annexed of Marcus Stern, now deceased. Therefore appellants were not competent to testify to the transactions accompanying the contract made in Stern's lifetime. The fact that Glaser testified at the trial did not make appellants competent witnesses, except as to matters concerning which Glaser testified in behalf of appellee. Glaser as a witness on behalf of appellee did not testify at all to any of the transactions which occurred when the contract was made. Appellants could not, by questioning Glaser upon cross-examination as to such transactions, thus make themselves competent as witnesses to the transactions, for he was, in thus testifying upon his cross-examination, not a witness on " behalf " of appellee. Upon his direct examination as a witness on behalf of appellee, he did not testify at all as to such matters. The statute which makes parties in interest as litigants, competent to testify, removing the disability imposed by the common law, makes certain exceptions. The statute is in part as follows: Section 2 of Chapter 51, R. S., provides in general that no party to a civil suit shall be allowed to testify on his own behalf when any adverse party sues or defends as administrator, etc. Under this provision several exceptions are specified. By paragraph 2 it is in effect provided that when in such action, etc., any agent of any deceased person shall, in behalf of any person suing or being sued as administrator, etc., testify to any conversation or transaction between such agent and the opposite party, etc., then such opposite party may testify concerning the same conversation or transaction. This latter provision is an exception to section 2 of the act. Section 2 is an exception to the operation of section 1 of the act, and section 1 is a modification of the com.

mon law rule as to disability of parties in interest. The question now presented is as to whether the testimony of appellants proffered as to conversations with Glaser, agent of Marcus Stern, had when the written contract was made, falls within the last exception noted, and is therefore competent. We think that it does not, and that it was properly excluded by the learned trial court. When Glaser testified "on behalf" of appellee to transactions with appellants, it became competent for appellants to testify in relation to the same, but this did not open the door for testimony of appellants regarding other matters not testified to by Glaser. Nor did the questioning of Glaser upon cross-examination as to such other transactions, not touched upon in his testimony upon direct examination, make the testimony of appellants competent as to the same; for to that extent he was not a witness " in behalf " of the appellee, within the provision of the statute. Dunlevy v. Montgomery, 66 Ill. 227.

. The facts being established without any conflict, it was for the court to determine whether the right of Stern was exercised within a reasonable time. C., R. I. & P. R. R. Co. v. Boyce, 73 Ill. 510.

We are of opinion that the court did not err in holding that in this case Stern had the right to enforce the contract when he gave the notice of August 10, 1896.

Evidence was proffered and excluded by the court as to the value of the mortgaged premises which were sold upon foreclosure of the mortgage lien in question. We are of opinion that in this there was no error. In the absence of any fraud or irregularity in the foreclosure proceedings, the price at which the property was sold is the conclusive measure of its value as a security of the notes in question and for the purposes of this suit. Franklin v. Greene, 2 Allen (Mass.), 519.

It can hardly be maintained that appellants had no notice of the foreclosure proceedings, for one of them was a party to the suit, and appellants were copartners.

The question of appellants' rights under the deficiency

decree in the event of payment by them of this judgment, is not, upon this record, a matter for consideration.  To say that they would be equitably entitled to the rights of appellee under the deficiency decree would be no answer to appellee's claim to this judgment.

We are of opinion that a clear right to the recovery was established, that no valid defense was shown, that substantial justice has been done, and that there is no reversible error in the proceedings of the trial court.

Therefore the judgment is affirmed.