JOSEPH P. CADIEUX, Appellant, vs. JOSEPH SEARS et al. Appellees.

*Opinion filed April 19, 1913.*

1. CONTRACTS—*when a contract is more than a mere option to purchase an interest in land.* A contract whereby the holders of the legal title to an apartment building agree to convey a one-fourth interest therein to a certain person for a stipulated price, without fixing any time for the conveyance but providing for the management and control of the property by the holders of the legal title and recognizing such person's right to one-fourth of the net rental, which was to be applied on his indebtedness, and providing that he should receive a one-fourth interest in the net proceeds of any sale of the property after deducting his indebtedness, etc., recognizes such person as equitably entitled to a one-fourth interest in the building, subject to the terms of the contract, and is more than a mere option to him to purchase such one-fourth interest.

2. TRUSTS—*effect where trustees have power to sell.* Where a contract by which the holders of the legal title to an apartment building recognize the equitable right of a certain person to a one-fourth interest therein provides that such holders may sell the property, and a sale is made for a consideration consisting partly of cash and partly of farm land, the rights and equities of the parties with respect to the consideration are the same as they were with respect to the apartment building and are to be determined by the terms of the contract.

3. SAME—*when trustees are only required to account for price received.* Where the holders of the legal title to land are trustees as to a one-fourth interest therein they are bound to use good faith and due diligence to guard the interest of the *cestui que trust* in making a sale of the property under a power conferred upon them, but they are not liable to him for a mere error of judgment as to the price, nor, in case the price obtained was reasonable at the time of the sale, to account for subsequent increase in value, based upon the boomed prices at which the land was subsequently sold.

APPEAL from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding.

CHARLES F. WHITE, GEORGE W. PLUMMER, and GEORGE M. BAGBY, for appellant.

CLARENCE T. MORSE, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Joseph. P. Cadieux filed a bill in equity in the superior court of Cook county to recover the value of a one-fourth interest in forty thousand acres of land in Hamilton county, Kansas, for an accounting for rents and profits, and other matters growing out of certain business transactions between himself, Joseph Sears, George H. Webster and William P. Anderson. Complainant charges in his amended bill that he had a one-fourth equitable interest in the forty thousand acres of Kansas lands, and that Sears and Webster, wrongfully and in violation of their trust relation to complainant, sold and conveyed said lands and refused to account with complainant for his said interest. The cause was heard upon the bill, answer and objections to the master's report. The bill was dismissed for want of equity upon the hearing, and complainant below has perfected an appeal to this court.

The history of the transactions out of which this litigation grows properly commences in 1888. At that time appellant, Joseph Sears, George H. Webster and William P. Anderson were tenants in common of two hundred acres of land adjoining the city of Aberdeen, South Dakota. Each of the four persons named owned a one-fourth interest in said lands. The lands were supposed to be valuable for subdivision purposes. On the 9th of January, 1888, all of the owners of said lands executed a deed conveying all their right, title and interest in said premises to John C. Lewis and Edwin Wright as trustees, giving and granting to them, as trustees, full power and authority to survey, subdivide, improve, sell and convey said premises or any part thereof. This deed was apparently executed merely as a matter of convenience in handling the property. The trustees took possession of said lands, built eight or ten houses thereon and sold and conveyed a number of lots. While the legal title was in Lewis and Wright appellant obtained a loan of $5000 or $6000 from Edwin Henning, and executed a mort-

gage to said Henning conveying his one-fourth interest to secure said loan. The indebtedness to Henning was not paid when it became due and a foreclosure and a sale followed. Henning became the purchaser under the foreclosure sale for $5000. The premises not having been redeemed within the time allowed by law for redemption, a deed was executed to the purchaser. Appellant contends that he had an understanding with Henning by which he had the right to redeem after the expiration of the statutory period. Whether this is true or not is rendered immaterial by what subsequently happened. The legal title to the South Dakota property remained in Lewis and Wright and no change occurred in the equitable ownership until 1895. In that year negotiations were commenced which culminated on July 22 of that year in an agreement to exchange the South Dakota lands for a large apartment building on the south side of Chicago, known as the Lanphere apartment building. The terms of the exchange were as follows: The owners of the South Dakota lands agreed to convey said lands, free and clear of all encumbrances, to E. O. Lanphere and to pay $20,000 in cash for the apartment building, which was to be conveyed subject to an encumbrance of $40,000. In order to give a good title to the Dakota lands it was necessary to have a conveyance from Henning. Appellant made an arrangement with Henning by which he agreed to convey all of his interest for $5000 cash and to accept appellant's personal obligation for the payment of the balance. This arrangement was carried out, appellees Sears and Webster furnishing the $5000 for Henning. Sears and Webster furnished three-fourths of the $20,000 that was paid to Lanphere and paid three-fourths of the commissions and other expenses in connection with the deal. Anderson paid the other one-fourth. The deal was then closed for the Lanphere building and deeds were exchanged. The deed conveying the Lanphere building purported to be for the expressed consideration of $150,000, and conveyed an un-

divided three-eighths part to Joseph Sears, three-eighths to George H. Webster and two-eighths to William P. Anderson, subject to an encumbrance of $40,000. Sears, Webster and Anderson took possession of the apartment building and collected the rents and paid all expenses for repairs, taxes, etc. It is stipulated that during the time they were in possession and control of the apartment building they collected $102,000 as rents and paid out $98,000 for expenses. This covered a period of ten years from 1895 to 1905. Appellant's contention is that Sears and Webster loaned him $11,108 to enable him to pay his one-fourth part of the cost of the Lanphere apartment building, and that the title to appellant's one-fourth interest in the Lanphere building was taken in the names of Sears and Webster in the nature of a mortgage to secure the $11,108 loan. There is some disagreement between the parties as to the terms and conditions of the contract as the same was originally understood between appellant and Sears and Webster. On the 30th day of March, 1897, the agreement between appellant, Sears and Webster was reduced to writing and duly signed, which, omitting the description of the property, is as follows:

"This memorandum, made this 30th day of March, A. D. 1897, between George H. Webster and Joseph Sears, parties of the first part, and Joseph P. Cadieux, party of the second part:

"Witnesseth, that whereas one William P. Anderson is the owner of an undivided one-fourth interest, said Webster of an undivided three-eighths interest, said Sears of an undivided three-eighths interest in and to the following described real estate: [Description omitted;] and whereas, said property was purchased from one Edwin O. Lanphere by said Webster, Sears and Anderson assuming the mortgage above referred to, the payment by them of $22,800 cash, (including commission and necessary expenses,) and the conveyance by said Webster, Sears, Anderson and Cadieux to said Edwin O. Lanphere of certain lands near Aberdeen, South Dakota, more particularly described in an agreement between the parties hereto and others and Edwin O. Lanphere, dated July 22, 1895, in which land said Joseph P. Cadieux held an equity of redemption to an undivided one-fourth interest, subject to a sale under decree of foreclosure of said one-fourth interest to one Edwin

Henning for the sum of $5000; and whereas, in order to carry through said trade said Webster and Sears purchased the interest of said Edwin Henning for the sum of $5000 and advanced three-fourths of said cash sum of $22,800, to-wit, the sum of $17,100; and whereas, said Joseph P. Cadieux was previously indebted to said parties of the first part in the sum of $408:

"Now, therefore, said parties of the first part hereby agree to and with said Cadieux, upon the payment to them of the sum of $11,108, with interest thereon at the rate of ...... per cent per annum from September 2, 1895, until paid, that they will convey, or cause so to be conveyed, to said Joseph P. Cadieux or his heirs an undivided one-quarter interest in said premises, subject to the proportionate lien of the said encumbrance of $40,000 and interest thereupon.

"It is further stipulated and agreed that until said $11,108, and interest thereon, is paid, said parties of the first part shall manage and control said property, and that one-fourth of the net proceeds from the rentals thereof shall be applied first to the payment of the interest on said indebtedness, and second to the reduction of the principal thereof, and in case said building shall be conducted at a loss, that one-fourth of the net loss shall .be added to the amount of the sum so to be paid by said Cadieux in order to acquire a one-fourth interest in said premises.

"In case said parties of the first part shall sell or convey said property to a *bona fide* purchaser, said Cadieux shall receive one-quarter of the net proceeds of such sale after deducting such sum as may then be due from said Cadieux under the terms of this agreement. And it is further stipulated and agreed that until said sum of money due from said Cadieux under the terms of this agreement shall be paid in full this agreement shall be held in escrow for the benefit of the parties hereto, and shall in no case be recorded, and shall be null and void in case said Cadieux shall sell, assign or hypothecate his interest herein without the consent of the parties of the first part, or until said property has been disposed of and the net results ascertained.".

No change occurred in the relation of the parties after this written agreement was executed. Appellant did not pay the $11,108, or any part of it, and took no part in the management of the apartment building during the ten years it was held by appellees under the Lanphere deed. In the meantime appellant had assigned whatever right or interest he had under the agreement to Frank Ennessy and subsequently went through bankruptcy and was discharged. After appellant's discharge in bankruptcy he obtained the

258 – 15

agreement from Ennessy by re-assignment. Anderson died and his widow succeeded to his interest, and her name appears in the future transactions as representing the one-fourth interest which she obtained from her deceased husband. On January 10, 1905, Sears, Webster and Mrs. Anderson entered into a written contract with John M. Hoffman to exchange the Lanphere apartment building, subject to an encumbrance of $40,000, for forty thousand acres of land in Hamilton county, Kansas, and $10,000 in cash. The contract for this exchange is signed by Joseph Sears, George H. Webster and Julia W. Anderson, as owners of the Lanphere building, and John M. Hoffman, representing the owner of the Kansas lands. Appellant was not consulted and did not consent to this exchange. The deal was closed and a deed conveying the Kansas lands to Sears, Webster and Mrs. Anderson was made and duly recorded in Hamilton county, Kansas, March 9, 1905. On March 29, 1905, Sears, Webster and Mrs. Anderson sold and conveyed all the Kansas lands to A. D. Atkins for one dollar per acre. The consideration was paid with $10,000 cash and about $30,000 in notes and mortgages.

Appellant contends that he was the equitable owner of an undivided one-fourth interest in the Lanphere building and that Sears and Webster held the legal title to his interest in trust, charged with the payment of $11,108; that he had the same interest in the proceeds of the sale of the Lanphere building that he had in the property. In other words, that he was equitably entitled to one-fourth of the $10,000 cash and a one-fourth undivided interest in the forty thousand acres of Kansas lands, and that the sale of his interest in the Kansas lands by Sears and Webster was wrongful and in violation of their trust, whereby he claims the right to call upon Sears and Webster to account to him for the actual value of the Kansas lands, which he claims is greatly in excess of the price at which they were sold to Atkins.

Assuming, as we think the evidence requires that we shall, that the written agreement of March 30, 1897, defines the rights of the parties, recourse must be had to the provisions of that instrument in order to determine the questions arising upon this record. The master found that this agreement merely gave appellant an option to purchase a one-fourth interest, at a stipulated price, in the Lanphere building, and this finding received the approval of the court below. If the first clause of the agreement be considered separate from the balance of the instrument, it might be construed merely as an option to appellant to purchase a one-fourth interest in the apartment building for the sum of $11,108. It will be noted, however, that there is no time mentioned within which appellant is to pay the money and receive a conveyance, but when the entire instrument is considered it is manifest that it was not intended merely to obligate Sears and Webster to convey at some time in the future a one-fourth interest upon the payment of the stipulated amount. The next succeeding clause makes provision for the management and control of the property by Sears and Webster and recognizes appellant's right to one-fourth of the net proceeds from the rentals, which were to be applied first to the payment of interest and then in reduction of the principal of $11,108, and said clause further provides that if there is a net loss appellant shall be charged with one-fourth, the same to be added to the sum to be paid by appellant in order to acquire a one-fourth interest in said premises. The next clause provides that in case of a sale of said property appellant shall receive one-fourth of the net proceeds of such sale after deducting whatever might be due from appellant to Sears and Webster under the terms of the agreement. When this entire instrument is considered we think it was the manifest intention of the parties to recognize appellant as equitably entitled to a one-fourth interest in the Lanphere building, subject to the encumbrance that was upon it when conveyed to appellees, and

charged also with the payment of $11,108 indebtedness of appellant to Sears and Webster. There could be no doubt of appellant's right to have demanded a conveyance of an undivided one-fourth interest in the Lanphere building if upon an accounting it had appeared that his indebtedness had been canceled by the application of the one-fourth part of the net rentals or by the payment of the same by appellant in money, and it is equally clear that appellant might have maintained a bill for an accounting of rents and profits and obtained a decree for specific performance upon the tender of any balance found unpaid. Under the terms of this agreement Sears and Webster assumed obligations to appellant of a fiduciary character, and they owed him the duty to exercise reasonable diligence to subserve his interest and to fairly and honestly account to him for one-fourth of the net proceeds arising from the rents of the Lanphere building, and to apply the same in discharge of the encumbrance against his interest. All necessity, however, for an accounting, in so far as the Lanphere building is concerned, is obviated by the stipulation of the parties that the net amount of rents received during the ten years the building was so held by the parties is $4000. Appellant's share of this amount would be $1000, which it will readily be seen is wholly insufficient to liquidate the interest that had accrued upon the $11,108. This was the situation when the Lanphere building was sold or exchanged for the Kansas property. By the express provisions of the contract between the parties appellant was entitled to a one-fourth interest in the net proceeds arising from the sale of the Lanphere building after deducting the sum due from him under the agreement. Under this clause of the agreement, as well as under the general principles of equity applicable to a sale or transfer of trust property, the consideration for the transfer of the Lanphere building was substituted for the building. The evidence is that the appellees received $10,000 in cash and the forty thousand acres of land in

western Kansas for the apartment building. Appellant was entitled to credit for one-fourth of the $10,000 in cash and also to one-fourth of the net proceeds realized from the sale of the Kansas lands. It is conceded that the Kansas lands were sold for an average of one dollar per acre, or $40,000 for the entire tract. Crediting the appellant with $10,000, (being one-fourth of the proceeds of the land,) $2500, (one-fourth of the $10,000 in cash,) and the $1000, (one-fourth of the net proceeds of the rents from the Lanphere building,) his total credits would be $13,500. Computing interest at five per cent. on the $11,108 from the date of the agreement to the rendition of the decree, a period of something over fifteen years, it will readily be seen that appellant's total credit is approximately $6000 less than his indebtedness.

The only possible theory upon which appellant can hope to have a decree in his favor rests upon his contention that the sale of the Kansas lands was at a price so grossly below their real value as to warrant a court of equity in disregarding the price obtained and holding Sears and Webster for whatever amount might have been obtained for the lands by the exercise of good faith and due diligence. Whether the relation of the parties is to be regarded as that of partners in a joint enterprise or as tenants in common it is not important to determine, since it is clear appellant held a one-fourth equitable interest in the Lanphere building, the legal title of which was in Sears and Webster, with authority to manage the property, collect the rents, and, after paying all proper charges, to account to appellant for one-fourth of the net proceeds. The power of Sears and Webster to sell the property is clearly recognized by the clause in the written agreement which recites that "in case said parties of the first part shall sell or convey said property to a *bona fide* purchaser, said Cadieux shall receive one-quarter of the net proceeds of such sale after deducting such sum as may then be due from said Cadieux under the

terms of this agreement." The sale or exchange of the Lanphere building cannot be held to be illegal, as being in violation of the agreement of the parties. Even if this were not true, appellant having elected to follow the proceeds of the trust fund after its conversion into the Kansas property, cannot now repudiate the transfer and at the same time claim anything in the Lanphere property beyond his interest in the rents and profits. The Lanphere property having been conveyed and appellant having filed his bill seeking to reach his interest in the proceeds of such conveyance, has the effect of substituting the Kansas lands and the $10,000 in cash received for the Lanphere building, and gives rise to the same equities in the substituted property that existed in the Lanphere building. The rights of the parties in respect to the Kansas lands and the $10,000 in cash are to be determined under the contract of March 30, 1897, precisely as they would have been had this litigation concerned the Lanphere building. Applying the terms of the written agreement to the Kansas property, the power and authority of Sears, Webster and Mrs. Anderson to sell and convey the Kansas property cannot be seriously questioned.

Conceding the existence of the power to dispose of the Kansas property, it was nevertheless the duty of Sears and Webster, growing out of their trust relation to appellant, to exercise good faith and to use reasonable diligence to protect his interests in making such sale. Appellant contends that Sears and Webster violated their duty in this regard and disposed of the Kansas lands at a price grossly below their real value, and that there was such a want of good faith and diligence on their part as to warrant a court of equity in calling upon them to account to appellant for the actual value of the Kansas lands at the time they were sold. By far the greater portion of the voluminous record in this case is occupied by testimony relating to the value of these Kansas lands. We would not be justified in extending this opinion by a critical examination of this large mass

of conflicting testimony. The land in question is located in the extreme western portion of Kansas. Portions of it border on the Colorado State line. At the time this land was conveyed to appellees it was wild, unimproved, sandy prairie. It is located in the arid region and cannot be made profitable for agriculture without irrigation. The evidence shows that in 1905 large tracts of similar lands were frequently sold under what is spoken of by the witnesses as "compromise tax sales," for $40 or $50 a section. The so-called compromise tax sale refers to a sale of lands for taxes for whatever portion of the tax due the lands will bring. Most of the lands in that section of the State were held by speculators and traders and changed hands in large bodies. Apparently no one had ever attempted to settle upon any of these lands at that time. Many of the witnesses for appellees testify that such lands could be bought at from seventy-five cents to one dollar per acre. When appellees sold these lands, in March, 1905, they conveyed them to A. D. Atkins, a real estate agent, who at that time was in the employ of Wise & Stern, a firm of real estate dealers of Kansas City, Missouri. The title was taken by Atkins for his principals, Wise & Stern, who furnished the purchase money. After Atkins obtained the title his principals advertised these lands extensively throughout the country; excursion trains at very low rates were run at the instance of Wise & Stern; conveyances were paid for, and prospecting parties were driven over these lands and were entertained at the expense of Wise & Stern. By energetic and persistent advertising the value of lands in this section of the State commenced advancing, and sales were effected by Atkins of considerable portions of these lands at from $3.50 to $4 per acre. Atkins had a contract with Wise & Stern by which he was to receive all that he could sell the lands for over $2.25 per acre. He testifies that he often took a considerable portion of the consideration in property. The sales by Atkins were made during the summer of 1905.

Appellant contends that the price at which Atkins sold these lands is conclusive evidence that they were worth more than appellees obtained for them. We cannot assent to this view. The controlling question is, what was the reasonable fair cash value of these lands at the time appellees sold them to Atkins?—and not what they brought after they had been boomed and advertised by skilled and experienced real estate agents. There is not a particle of evidence in this record to support appellant's allegation, "on information and belief," that there was a combination and conspiracy between Atkins, Sears and Webster to defraud appellant by dividing the increased price at which the lands were sold, between Atkins and appellees. There can be no question of the good faith and *bona fides* of the sale by Sears, Webster and Mrs. Anderson to Atkins and that the consideration mentioned in the deeds is the only consideration that any of the grantors received. Appellees, having the power to sell these lands, were only required to exercise their best judgment and due diligence, in good faith, to obtain what the lands were worth, and even if it should appear that appellees had made a mistake in their judgment as to the value placed upon the property, in the absence of any proof tending to show that they acted fraudulently or in bad faith with appellant they could not be held liable for a loss. Sears, Webster and Mrs. Anderson were each interested in these lands as well as appellant, and it may well be assumed that self-interest would prompt them to try to secure the highest price attainable. Again, appellant was largely indebted to Sears and Webster. They must have known that it was to their interest to obtain at least enough for appellant's interest to cancel his indebtedness to them. There is every reason to believe that appellees in good faith obtained what they considered a fair and reasonable price at that time for the Kansas lands. Under these circumstances it would be manifestly inequitable to require them to account for money which they never received, based on the boomed

prices at which these lands subsequently sold. *Poole* v. *Koons,* 252 Ill. 49; *Cooper* v. *Cooper,* 256 id. 160.

Appellant has failed to sustain his bill. Upon a fair and equitable statement of the account between appellant and Sears and Webster a considerable balance would necessarily have to be found against appellant, but since appellees are not asking for a decree against appellant for any balance that may be due them, no reason exists for remanding the cause for the purpose of having the account stated.

The decree of the superior court of Cook county will be affirmed.

*Decree affirmed.*