Ruth McGinnis, Plaintiff in Error, v. Thomas Mc-, Ginnis, Walter H. McDonald and Alta McDonald, Defendants in Error.

Gen. No. 23,068.

1. FRAUDULENT CONVEYANCES, § 264*—*when absence of fraud in assignments of leaseholds is shown.* On a bill to set aside for fraud, as against an attachment in aid of an action on a foreign judgment, assignments of two leaseholds from one defendant to the other, evidence *held* to sustain the chancellor's findings as to the absence of fraud, although the circumstances were such as to create an unfavorable inference as to the genuineness of the transaction.

2. WITNESSES, § 254*—*when testimony of witness should not be disregarded.* The improbability of the truth of matters testified to by a witness does not authorize disregarding such testimony unless it was contradicted or impeached by other evidence.

3. WITNESSES, § 254*—*when testimony of unimpeached may not be ignored.* The testimony of unimpeached witnesses cannot be ignored merely because what they testified they did in a business transaction may not appear to be the wisest and safest thing to have done under the circumstances.

4. FRAUDULENT CONVEYANCES, § 236*—*when burden of showing fraud in assignments of leaseholds is not sustained.* On a bill to set aside an assignment of leaseholds for fraud, the burden of proving fraud is upon the complainant and is not sustained by ridiculing the probability of defendant's testimony rather than proof of substantive facts directly tending to show fraud.

5. FRAUDULENT CONVEYANCES, § 236*—*when assignment of leaseholds is prima facie fair.* On a bill to set aside the assignment of leaseholds for fraud, where the relation between the assignor and assignee was not such as to create a presumption of fraud, the transaction must be deemed prima facie fair and honest until fraud is proven.

6. EVIDENCE, § 478*—*when failure to call witness does not create unfavorable inference against party.* Where the burden of proof of certain facts rested upon the complainant, the failure of one of the defendants to call a codefendant as a witness, or other persons who could have testified as to matters testified to by such defendant, does not create an unfavorable inference against the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

latter where all of such witnesses were just as accessible to complainant as to him.

7. FRAUDULENT CONVEYANCES, § 109*—*when creditor may be preferred.* As against other creditors, a creditor violates no rule of law by taking payment of his demands from the debtor, and the latter may prefer him as a creditor even by selling his property below its market value, provided the transaction was not done with a view to delay, hinder or defraud his other creditors.

8. FRAUDULENT CONVEYANCES, § 265*—*how intent to defraud creditors must be shown.* Intent of a debtor to defraud creditors in making a transfer of his property must be proved by evidence tending to show its existence, and from which it legitimately results as a conclusion of fact drawn by a court or jury without the aid of any legal presumptions.

Error to the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Affirmed. Opinion filed May 14, 1918. *Certiorari* denied by Supreme Court (making opinion final).

VINCENT D. WYMAN, HARRY C. KINNE and CHARLES E. CARPENTER, for plaintiff in error.

GEORGE H. MASON, for defendant in error Bernard F. Clettenberg, trustee of Thomas McGinnis.

EDWARD H. MORRIS, for defendants in error, the McDonalds.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

Plaintiff in error filed her bill in equity to have declared null and void for fraud, as against an attachment in aid sued out in her behalf, assignments of two leaseholds by defendant in error McGinnis to defendant in error McDonald. On a hearing before the chancellor the bill was dismissed for want of equity.

Complainant made proof of these undisputed facts: That Thomas McGinnis had an undivided interest in another piece of real estate, the rents of which were collected by said McGinnis through McDonald for sev-

---

*See **Illinois Notes Digest**, Vols. XI to XV, and **Cumulative Quarterly**, same topic and section number.

eral years prior to 1912, and with respect to which a suit for accounting was brought in the State of Missouri by plaintiff in error against defendant in error McGinnis, wherein on March 8, 1915, a judgment for $13,434.95 was rendered against the latter; that in that suit McDonald was a witness for McGinnis, preparing and presenting an account of what purported to be his collections and expenditures connected with the management of said property; that on June 11th, McGinnis conveyed to one Harding, and the latter to McGinnis' wife, property in Arizona worth $10,000 to $12,000; that McDonald took the acknowledgments of both conveyances; that June 16th, he assigned to McDonald the two leaseholds in question (which had 89 years to run), one for property on State street, the other to property on Monroe street, Chicago, valued, according to a witness for complainant, at $100,000 and $75,000 respectively; that on June 19th, complainant brought suit against McGinnis on the Missouri judgment, and 10 days later sued out said attachment in aid and levied on said leaseholds as the property of McGinnis; that in September she filed the bill herein; that in November, McDonald assigned the State street leasehold to one Pick for $57,500; that the original lease to the State street property contained a provision requiring 20 days' notice to the owner, a nonresident, of any assignment thereof, a waiver of which was procured by telegram, with McDonald's knowledge, before the assignment was made to him; that he accompanied McGinnis to have the assignments prepared, one by said owner's agent, the other by McGinnis' attorney; that while these negotiations were pending McGinnis told said agent that he would sell the State street leasehold to the owner for $60,000; that he had previously refused offers of $50,000 therefor; that the considerations recited in the assignments to McDonald were $10 and $2 respectively; that the usual precaution of buyers of real estate to procure an abstract of title or memo-

randum of search of the record was not taken by Mc-
Donald; that immediately after the assignment he
advertised the State street leasehold for sale.

Relying mainly on these facts and circumstances as
constituting prima facie a case of fraud, complainant
rested.   Thereupon the defense called McDonald and
rested with his testimony to the effect that he had
bought the leasehold for a good and valuable consider-
ation, paying $75,000 therefor.   It is argued from this
chain of events, and the additional circumstances
brought out on the cross-examination of McDonald
respecting the consideration and his knowledge of
McGinnis' affairs, that the chancellor's conclusions
were against the weight of evidence.

McDonald was in the real estate business, connected
with a firm doing an extensive business, and had been
for 30 years.   While he denied knowledge of said judg-
ment against McGinnis, he was on more or less inti-
mate terms with McGinnis, apparently conversant
with his property interests, and knew that he thus dis-
posed of nearly all his real estate within a few days.

McDonald explained that the consideration of $75,000
was made up as follows:   A mortgage on the State
street property amounting, with interest, to $20,400;
$3,660 taxes; $35 paid to the owner's agent; $3,000 for
occupancy of said premises by McGinnis for 3 months
after the assignment; $12,000 cash advanced by him to
take up a note of McGinnis' at a bank and $666 accrued
interest, to secure which he held an assignment in blank
of the Monroe street property; $6,225 cash advanced
later for which McGinnis gave due bills; assumption
of another note of McGinnis' to the same bank for
$12,500, guaranteed by McDonald's firm by himself,
its vice president, and the balance in cash $16,435.

McDonald testified that he kept no bank and no
ledger account, and kept his money in a sealed enve-
lope in a hotel safe; that he made the above cash ad-
vances and payments therefrom; that he did not as-

sume such mortgage nor take up the note of $12,500 until he received the consideration for his sale or assignment to Pick; that in his negotiations with McGinnis he took no account of unexpired insurance or of over $2,000 McGinnis had paid in advance for ground rental; that the bank note of $12,500 so taken up by him, which was produced in such mutilated state as not to disclose the date of execution, was so mutilated by his tearing off the revenue stamp for a boy; that the only memorandum he had of the above items of consideration was such as he made in a blank book or diary kept in his pocket.

While these and other minor circumstances might well be said to raise much doubt and create unfavorable inferences as to the genuineness of the transactions between McGinnis and McDonald, we cannot say that the matters so testified to by him were altogether improbable. But if they may be so deemed, unless his testimony was contradicted or impeached by other evidence, it cannot be utterly disregarded. (*O'Callaghan v. Dellwood Park Co.*, 242 Ill. 336; *Zetsche v. Chicago, P. & St. L. Ry. Co.*, 238 Ill. 244; *Bowman v. Ash*, 143 Ill. 649, 663-664.) As said in *Dunn v. Weir*, 34 Ill. App. 613: "It would hardly be safe practice to ignore the testimony of unimpeached witnesses because what they say they did in a business transaction may not appear to be the wisest and safest thing to do, under the circumstances."

The burden of proving fraud was on complainant. But she seems to have relied more upon ridiculing the probability of McDonald's testimony than proof of any substantive facts directly tending to show fraud. Ridicule is sometimes an effective form of argument but it is not evidence. True, there is much ground for suspicion in the circumstances, but there was no proof of any such relation between the parties that fraud would be presumed. On the contrary, in such a case the transactions would be deemed prima facie fair and

honest until fraud was proven. (*Mathews v. Reinhardt,* 149 Ill. 635, 642.)    There was no proof of McGinnis' insolvency, or of an actual or express intent to hinder, delay or defraud his creditors, such as must be proven without the aid of legal presumptions where a conveyance is made upon a valuable consideration (*Hughes v. Noyes,* 171 Ill. 575, 580), or that McDonald lacked financial means, or that he did not have money or keep it in the manner claimed, or was not a bona fide creditor of McGinnis, or that there was no such form of indebtedness at the bank or otherwise as he claimed, or that he entered into any secret trust.    McDonald thus claiming to have paid a good and valuable consideration, stood, as he might well do, on his own word until it was impeached or discredited by other evidence than mere suspicious circumstances.

The burden of proving fraud resting with complainant, the failure to call McGinnis raised no more of a presumption against McDonald than against her. McGinnis, the hotel cashier, the clerical force of the banks, and those connected with McDonald's firm, and its books, were apparently just as accessible to complainant as to McDonald.    The failure of McDonald, therefore, to call any of such witnesses, equally accessible to each, furnished no ground for a prejudicial inference against him. (*Brown v. State,* 98 Miss. 786, and cases there cited; *People v. Munday,* 280 Ill. 32.)

If McDonald was a creditor of McGinnis, as he testified, he violated no rule of law in taking payment of his demands (*Gray v. St. John,* 35 Ill. 223-240), and McGinnis had a right to prefer him as creditor, even if in failing circumstances and even by selling his property below its market value (which he thought was worth about $97,500), provided the transaction was not done with a view to delay, hinder or defraud his other creditors. (*Waddams v. Humphrey,* 22 Ill. 661-663.)    But "the actual and express fraudulent intent must be proved by evidence tending to show its

existence, and from which it legitimately results as a conclusion of fact drawn by a court or jury without the aid of any legal presumptions.'' (2 Pomeroy's Equity Jurisprudence, sec. 971.)

While we might share complainant's suspicions we must agree with the chancellor's conclusions.

It is urged that it was error to reject the deposition of McDonald filed in the Missouri case relating to other property than that involved in these assignments. While its relevancy and materiality are not apparent, yet if received we fail to see how it would have led to a different conclusion. The decree will be affirmed.

*Affirmed.*