## Ella R. Hopkins and Mary Irene Stenson, Executrix of the Estate of Joseph Clement Stenson, Deceased, Appellants, v. Paul C. Loeber et al., Appellees.

Gen. No. 44,080.

Opinion filed June 25, 1947. Released for publication July 9, 1947.

SHULMAN, SHULMAN & ABRAMS, of Chicago, for appellants; MEYER ABRAMS, of Chicago, of counsel.

J. EDWARD JONES, of Chicago, for certain appellee.

GEORGE E. Q. JOHNSON and WALTER E. WILES, both of Chicago, for certain other appellee.

BOYLE, MURPHY & NELSON, of Chicago, for certain other appellee; THOMAS E. MURPHY, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

This appeal is from a decree entered by the Superior Court of Cook County on February 26, 1947, in favor of defendants. This cause was here on a prior appeal, *Hopkins v. Loeber,* 323 Ill. App. 652 (Abst.), in which this court determined that the defendants, as trustees, were liable for a breach of trust. The essential facts creating the liability are fully stated in the opinion of this court to which we refer, and it will not be necessary to restate them, in the consideration of the questions involved in this appeal.

Upon remandment of the cause to the Superior Court, the court re-referred the cause to a master to take evidence and make his recommendation of conclusions of law and fact as to the extent of the liability of each of the trustees. Upon the hearing before the master, the plaintiffs offered evidence as to the

value of the securities belonging to the trust and exchanged by the trustees for the ''B'' certificates referred to in our former opinion, which we are convinced upon the record were of no value. The proof made was with respect to the securities referred to as Maple Court Apartment bonds, Oak Park Manor bonds, Roscoe Apartment bonds and Millsfield bonds. The total claim now made, based upon said proof, is $14,133.05.

The evidence offered and received by the master, it is argued by defendants, was not competent evidence as to the measure of liability of the defendants as trustees; that the proof showed values at a time too remote from the time of the alleged breach of trust. The chancellor sustained this contention and entered the decree.

Loeber, as shown by the evidence in the record and pointed out in our former opinion, had a substantial interest in the Harvey Hotel Corporation. He owned $40,000 in bonds of the Harvey Corporation. Whatever securities he exchanged belonging to the trust, except the Millsfield bonds, for the ''B'' certificates held by Harvey, inured to his benefit. The securities received by Harvey from the trust estate, for the ''B'' certificates, were then exchanged by Harvey with Loeber for the $40,000 of Harvey bonds held by Loeber. In our former opinion, we said on this subject:

''There was further evidence and the master found and the decree sustained the finding, that on August 18, 1930, Loeber entered into an agreement with Louis F. Harvey, who had threatened criminal action against Albert E. Leight on account of what had been done in connection with the business of Leight & Co., whereby it was agreed that after the composition and declaration of trust had been approved by the bankruptcy court, Loeber would issue to Harvey in exchange for his Class B certificates defaulted bonds and coupons of the trust estate.''

Defendants Fox and Swayne had no financial or beneficial interest in the Harvey transaction. We are obliged to consider the measure of their liability upon a different theory than that of Loeber. The resolution adopted by the trustees for the exchange of the securities out of the trust for the ''B'' certificates occurred on January 21, 1931. Within two weeks after the resolution, the exchange of the securities was made by Loeber, by which Loeber benefited, as indicated.

The trust agreement, under which the defendants acted as trustees, gave the defendants broad powers of sale and disposition of the securities in the trust. Where a trustee wrongfully exercises the power conferred upon him by the trust agreement, but is not shown to have personally benefited by his breach of trust or to be guilty of fraud in connection therewith, the authorities are clear that his measure of liability, if any, for the breach of trust, would be the loss, if any, in value of the securities at the time of the breach of trust, and not a value sought to be established some five or six years later. This is the measure of liability applicable to Fox and Swayne. *Cadieux v. Sears*, 258 Ill. 221. In the case cited, it was sought to prove as a measure of recovery against the trustees, for alleged breach of trust in the sale of land, the amount ultimately realized from the trust property by the purchaser, Atkins, some considerable time subsequent to the sale to him by the trustees. It was there held that the controlling question was, the reasonable, fair cash value of the lands at the time appellees (trustees) sold them to Atkins.

- Scott on Trusts, Vol. 2, § 208.3, p. 1114, says:

''The beneficiaries are not entitled to the value of the property at the time of the decree if it was not the duty of the trustee to retain the property in the trust and the breach of trust consisted merely in selling the

property for too low a price. In such a case, although he is liable for the difference between its fair value and the price at which he sold it, he is not accountable for any subsequent rise in its value.''

Loeber occupies a different position of liability because his breach of trust resulted in personal benefit to him, and he knew at the time that he would benefit by it. He was clearly guilty of fraud in the transaction, except as to the Millsfield bonds, which we shall treat separately in determining the extent of liability of each of the trustees. He must respond for the value of these securities, which would have inured to the benefit of the trust had he not illegally disposed of them, and had they remained in the trust. In other words, the cash received upon the securities transferred illegally by him out of the trust, no matter when that cash was received, belonged to the trust estate. The proof of plaintiffs as to the amount realized upon the securities taken out of the trust, representing the proceeds of foreclosure sales several years after the transfer, was clearly competent proof against Loeber, and the claim that such proof was too remote is untenable as to him. *Stemm v. Gavin*, 255 Ill. 480, 486; 2 Scott on Trusts, § 170; *Dixmoor Golf Club, Inc. v. Evans*, 325 Ill. 612, 624; *Loeb v. Stern*, 99 Ill. App. 637, 646, aff'd 198 Ill. 371, 383.

It is argued here, on behalf of Loeber, that the fact alone that the securities in the trust estate eventually came into the hands of Loeber as his own property, through the medium of exchange with Harvey for Harvey Hotel bonds, is not sufficient to establish a liability for him different from Fox and Swayne; that there is no evidence in the record of any prior understanding between himself and Harvey that they would so exchange them; that Loeber having denied there was any such previous understanding, this testimony stands uncontradicted. It is also argued that a trustee

has a right to acquire trust securities at a time when he no longer has any responsibility to the trust over such securities.

The record is against these contentions. It must be remembered, as pointed out in our former opinion, that Loeber had entered into an agreement with Harvey, unsavory in character, to exchange Harvey's worthless "B" certificates for securities in the trust estate, when the composition in bankruptcy would be confirmed, and dissuade Harvey from instituting criminal prosecution against Albert E. Leight. The record clearly discloses that this unsavory understanding between Harvey and Loeber reached fruition on January 21, 1931, when, by resolution of the trustees, the exchange of the trust securities for the "B" certificates was authorized. Within two weeks after this authorization and the exchange by Harvey of his "B" certificates for the trust securities, we find Loeber exchanging his Harvey Hotel bonds with Harvey for the securities Harvey acquired from the trust estate.

We recognize the rule that where a witness testifies concerning a material matter, and his credibility is in no way attacked successfully, his testimony cannot be arbitrarily rejected, especially when it is undisputed. But where, as in the instant case, upon this record he stands convicted of a fraudulent transaction, in entering into such an unsavory agreement with Harvey, while acting as trustee, through which he eventually benefits, then he no longer occupies the position of the hypothetical witness, whose credibility has not been affected, and the rule contended for does not apply. A trustee, who is shown to have come into the possession of the trust securities so shortly after he breached his trust, is not free from the charge of fraud, which the circumstances of the instant case clearly establish.

In *McCleary v. Lewis*, 397 Ill. 76, it was shown that the administratrix, occupying the relative position of

a trustee, personally acquired the property which she sold as administratrix at a judicial sale, shortly after such sale. It was there held to be evidence of breach of fiduciary duty and circumstantial evidence of fraud on her part. That fraud may be established by circumstances as well as by direct testimony.

In *Voorhees v. Campbell*, 275 Ill. 292, at page 324, it was said:

". . . the fiduciary relation being established, the burden of proof is upon the one receiving the benefit to show an absence of undue influence by establishing such facts as will satisfy the court that the dealing was at arm's length, or that the transaction was had in the most perfect good faith and was equitable and just between the parties."

██ Loeber, having the burden of establishing utmost good faith in his acquisition of the trust securities so shortly after they had been transferred out of the trust, especially when his own credibility as a witness was seriously affected, should have called Harvey as a witness to support his testimony that he had no understanding with Harvey prior to the exchange he made with Harvey of the Harvey bonds, or excuse the failure to call Harvey as a witness. A trustee who has the burden of explaining away a transaction should also explain the absence of a material witness to the transaction.

█ As to Loeber with respect to the Millsfield bonds, the proof made by the plaintiffs was that the foreclosure sale of these bonds was held January 22, 1932. The exchange of these bonds out of the trust for the "B" certificates was made in January, 1931. Therefore, the proof as to the amount realized on these bonds from the foreclosure sale was not remote, and we regard the proof competent. This proof is also, for that reason, competent against defendants Fox and Swayne.

As to the Maple Court Apartment bonds, Oak Park Manor bonds and Roscoe Apartment bonds, we conclude there was no competent proof of loss to the trust as to Fox and Swayne, and the decree in their favor, as to these bonds, is affirmed and, for the reasons already indicated, is reversed as to defendant Loeber. A decree must be entered for the plaintiffs against Loeber, upon the proof made as to said bonds. As to the Millsfield bonds, the cause is remanded to the Superior Court, with directions to allow these defendants, including Loeber, to offer proof, if any they have, to rebut the evidence of the plaintiffs and enter a decree in accordance with the views herein expressed.

*Decree affirmed in part and reversed in part and remanded with directions.*

O'CONNOR, J., concurs.

NIEMEYER, P. J., dissents. If it was understood between Harvey and Loeber not later than the actual transfer of the defaulted bonds to Harvey in exchange for his "B" certificates that Harvey would thereafter exchange certain of the defaulted bonds for the Harvey Hotel bonds held by Loeber, the majority opinion correctly applied a different rule of damages to Loeber than that applied to Fox and Swayne. The finding of the master, approved by the trial court, that Harvey and Loeber made the exchange after Harvey received the defaulted bonds from the trustees, is silent as to when the agreement to exchange was made or when the negotiations ending in the agreement were commenced. Plaintiff accepted this finding and did not seek to have it made more specific. Plaintiff also accepted the recommendations of the master and the direction of the trial court and this court on the first appeal that the cause be re-referred to the master "for the purpose of determining the actual value of the defaulted bonds and coupons of the trust which were exchanged with Louis Harvey for Class B certifi-

cates, and that a personal judgment be entered for said amount against Loeber,'' asking only that the liability be extended to Fox and Swayne. This court held that Fox and Swayne were equally liable with Loeber for the exchange of the defaulted bonds for Class B certificates, and the order of re-reference, construed in the light of that holding, must be limited to the value of the bonds at the time of the exchange. It was not until after remandment of the cause on the first appeal that plaintiff raised the point that Loeber was liable for the amount realized by him on the defaulted bonds, even though Fox and Swayne might not be held to that liability. This contention should have been made in the trial court where a finding as to the facts essential to the liability could have been made.

If the point had been urged at a proper time, the record does not support plaintiffs' claim. The only evidence as to the negotiations for the transfer of these bonds to Loeber for his Harvey Hotel bonds is the undisputed testimony of Loeber. When examined by plaintiffs' counsel under section 60 of the Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060], almost ten years after the exchange of the bonds, Loeber was uncertain as to the disposition made of his bonds. He said that Harvey finally got the bonds back, some exchange having been made which he did not recall. When shown his answer in the suit against him by the Leights, filed in 1932, he adopted it as stating the truth of the transaction, namely that he got the defaulted bonds for his Harvey Hotel bonds. When examined by his counsel on the presentation of his defense, he stated that he did not talk with Harvey about the transfer until after Harvey had actually acquired the defaulted securities from the trust; that Harvey then came to him to talk about the trade. This testimony was accepted as the truth, as Loeber was not cross-examined in reference to it and no testimony was offered to contradict it. Harvey,

who was actually available to plaintiff and Loeber, was not called as a witness. There was no obligation on Loeber to call witnesses to corroborate his uncontradicted testimony.

This testimony affirmatively proves that there were no negotiations or understanding regarding the exchange of Loeber's Harvey Hotel bonds for the defaulted bonds acquired by Harvey until after the trustees had actually transferred the defaulted bonds to Harvey, and that the negotiations were initiated by Harvey. Upon this state of facts Loeber was as free as any stranger to the trust to acquire the bonds from Harvey. *Munn v. Burges,* 70 Ill. 604, 611; *Walker v. Carrington,* 74 Ill. 446, 472; *Bush v. Sherman,* 80 Ill. 160, 171–172; *Watson v. Sherman,* 84 Ill. 263. In the *Munn* case the trustee acquired the property within two weeks after it passed from the trust; in the *Watson* case the elapsed time was only three days.

There is nothing in the record to justify the court in disregarding Loeber's testimony. It is not and cannot be claimed that he wilfully and knowingly swore falsely as to any matter material to the issues thereby justifying the rejection of his uncorroborated testimony. The testimony does not contain its own impeachment. *Schueler v. Blomstrand,* 394 Ill. 600; 617; *People v. Davis,* 269 Ill. 256. It is not answered by doubts and suspicions. *McGinnis v. McGinnis,* 211 Ill. App. 240; *Bowman v. Ash,* 143 Ill. 649, 663–664.

The three trustees should be placed on the same footing and liability limited to the value of the Millsfield bonds because of plaintiffs' failure to prove the value of the other bonds as of the time of the transfer.