*In re* MARRIAGE OF MARLENE HUNTER, Petitioner-Appellee, and ROBERT L. HUNTER, Respondent-Appellant.

Second District   No. 2—91—0428

Opinion filed January 23, 1992.—Rehearing denied February 27, 1992.

Peter F. Carroll, of Steffen & Carroll, of Elgin, for appellant.

Peter D. Michling and Martin J. Coonen, both of Weisz & Michling, of Woodstock, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Respondent, Robert Hunter, appeals the judgment of the circuit court of McHenry County which dissolved his marriage to petitioner, Marlene Hunter, and distributed the marital and nonmarital property. On appeal, respondent contends that the court erred in finding that property given by petitioner's parents to the couple in joint tenancy

was petitioner's nonmarital property and that the court erred in the valuing of respondent's business.

The parties were married in 1970. They had no children. They stipulated to grounds of irreconcilable differences. At the time of trial, petitioner was a factory worker earning approximately $286 per week. Respondent was self-employed. His business, known as Hunter's Welding, does lawn mower, tractor and small machinery repair.

In its "Memorandum and Preliminary Order," the trial court found that the marriage was marked by "unusual financial arrangements." Virtually throughout the marriage, the parties maintained separate bank accounts, and each was responsible for certain expenses. Petitioner, for example, purchased groceries while respondent was solely responsible for paying the mortgage. At trial, the parties testified that they had sold their first home and divided the proceeds between themselves.

At the time of trial, the parties owned four major assets: the marital home, the husband's business, certain certificates of deposit and a second residence, which was being rented. It was undisputed that the marital home, located on 25 acres of farmland on Reese Road (the Reese Road property), and respondent's business were marital property. The second residence was located on Rose Farm Road (the Rose Farm Road property). In 1975, petitioner's parents deeded the latter property to the parties in joint tenancy, reserving a life estate to themselves.

Petitioner's father continued to occupy the residence until 1987. While he resided there he paid most of the expenses associated with the property, except that petitioner usually paid the real estate taxes from her bank accounts. After her father moved out, petitioner (alone) managed and maintained the premises. She located tenants for the property, collected the rent and deposited the rent into her personal accounts. She frequently made improvements at the premises herself or in conjunction with family members. She testified that respondent did not work on the premises except on one occasion when he helped repair a steam pipe. On that occasion, she paid him for his labor. On the other hand, respondent testified that he did considerable work at the Rose Farm Road property and could not recall being paid for it.

The parties each presented expert witnesses to testify concerning the value of Hunter's Welding. Petitioner's expert was Joan Baurer. She testified that she was a certified financial planner who holds bachelor's degrees from Queens College, Flushing, New York, and

California State-Bakersfield. She had attended numerous seminars in her field, including one in small business evaluation. In the course of her occupation as a financial planner, she had evaluated approximately 15 to 20 small businesses, including a welding business. She had given expert testimony concerning the valuation of small businesses in McHenry County on two or three prior occasions.

Baurer further testified that she had reviewed respondent's business ledgers, the parties' income tax returns and lists and photographs of respondent's business equipment. She concluded that Hunter's Welding had a fair-market value of $90,000.

Respondent presented two expert witnesses, Michael Powers and Robert Horvath. Powers testified that the fair-market value of the equipment, tools, machinery and office furnishings of Hunter's Welding was $17,000. Horvath testified that the machinery and equipment of the business were worth $8,380. Respondent testified that, in his opinion, Hunter's Welding could be sold as a going concern for $32,000 to $37,000.

There was considerable additional evidence about everything from tractors to animals. In its memorandum, the court noted that "[t]ractors consumed a significant portion of the trial time." The court also stated that "the parties have identified certain guns and animals. They have also generally placed some dollars-and-cents values on these items. The dog is lame but professionally trained, the peacocks are rare and reasonably expensive and the purpose of the pygmy goat is still a mystery!"

At the conclusion of all this evidence, the court awarded the Rose Farm Road property to petitioner as her nonmarital property. The court found that Hunter's Welding had a fair-market value of $55,000 and that the Reese Road property had a fair-market value of $80,000. The court awarded both these assets to respondent so that he could maintain his business, which was located on the Reese Road property. The court further ordered that respondent reimburse petitioner $2,200 for a gift she made to Hunter's Welding. The court awarded petitioner the certificates of deposit and ordered respondent to pay $57,500 to petitioner. The judgment further provided that all the tractors were marital property and that the parties would attempt to divide the personal marital property between themselves.

Respondent timely filed a motion to reconsider the judgment, which the court denied. Respondent now appeals. On appeal, respondent contends the court erred in finding that the Rose Farm Road property was petitioner's nonmarital property and that the court erred in its valuation of Hunter's Welding.

Respondent's first contention is that the court abused its discretion in finding that the Rose Farm Road property was petitioner's nonmarital property since it was deeded to the parties in joint tenancy. Respondent also points out that petitioner's parents gave the parties money for use in the construction of the residence upon the property. These checks, too, were given to the parties jointly.

Petitioner's parents apparently were deceased at the time of trial. Thus, there was no direct evidence of their intention at the time the gift was made. Other than the deed and the checks themselves, the only evidence on the subject was the way the parties subsequently dealt with the property. Allowing for the trial court's resolution of conflicts in the testimony, this evidence generally showed that the parties treated the property as petitioner's alone. With help from her parents and siblings, petitioner solely maintained the premises, even after her father ceased to reside there. She located tenants, collected the rent and deposited the rent in accounts which were in her name only. Respondent, however, contends that this evidence was insufficient to overcome the presumption of a gift to the parties jointly.

The starting point for our decision of this issue is section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 503). This section provides that all property acquired by either spouse during the marriage is marital property except for property acquired in certain specified ways, such as by gift or devise. (Ill. Rev. Stat. 1989, ch. 40, par. 503(a).)

"For purposes of distribution of property pursuant to this Section, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage, including non-marital property transferred into some form of co-ownership between the spouses, is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership ***. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section." Ill. Rev. Stat. 1989, ch. 40, par. 503(b).

The Act thus creates a presumption that all property acquired during the marriage is marital property regardless of the manner in which title is held. Generally, the placing of title to nonmarital property in joint tenancy raises the presumption of a gift to the marital estate. (*Zito v. Zito* (1990), 196 Ill. App. 3d 1031, 1035; *In re Marriage of Ackerman* (1988), 168 Ill. App. 3d 438, 443.) The presumption can only be overcome by clear and convincing evidence. (*In re Mar-*

*riage of Rogers* (1981), 85 Ill. 2d 217, 222-23; *Zito*, 196 Ill. App. 3d at 1035.) The factors used to determine whether the presumption of gift to the marital estate has been overcome include the making of improvements, the payment of taxes and mortgages, the occupancy of the premises as a home or business and the extent of control and management of the property. *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 574.

Although the literal language of the statute refers to interspousal gifts, and the vast majority of cases involve such a factual pattern, respondent argues that the presumption of a gift to the marital estate should apply to this case, where the property was a gift from respondent's parents. In *In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, the court applied the presumption that the engagement ring worn by Mrs. Weinstein was a gift by Mr. Weinstein's parents to the parties jointly and thus was marital property. The husband failed to present any evidence to overcome the presumption. (*Weinstein*, 128 Ill. App. 3d at 247-48.) In *In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, the wife's father presented her with certain stock certificates. The court held that the presumption that property acquired during the marriage is marital property and the presumption of a gift to the wife individually cancelled each other out and a simple manifest weight of the evidence standard applied. *Rosen*, 126 Ill. App. 3d at 771-72.

The instant case, of course, is not strictly analogous to either *Weinstein* or *Rosen*. The Rose Farm Road property was deeded to the parties in joint tenancy. Unfortunately, no direct evidence of the donors' intent was available. Under these circumstances, applying the four factors listed in *Wojcicki*, we are unable to conclude that the trial court's finding was against the manifest weight of the evidence in determining that the Rose Farm Road residence was petitioner's nonmarital property. The court apparently accepted petitioner's testimony that she alone, or in conjunction with various family members, made improvements on the property. On the one occasion that respondent assisted, he was paid for his efforts. Petitioner paid the taxes on the property from accounts held in her name. Petitioner never occupied the property, but used it as a source of rental income, which was deposited in accounts solely in her name. In this regard, petitioner solely managed the property, which included finding renters and collecting the rent.

We note that in our review of the evidence we consider only evidence of the parties' activities after petitioner's father ceased to occupy the premises in 1987. Prior to that he had occupied the resi-

dence pursuant to a life estate reserved in the deed. That petitioner should have helped her father maintain and improve the premises while he occupied them pursuant to a life estate is unremarkable. That this pattern continued after her father moved out is much more significant. Additionally, we note that respondent did testify that he assisted in improving the property and to the best of his recollection was not paid for his efforts. This conflict in the evidence was for the trial court, as the trier of fact, to resolve, and we will not disturb the court's resolution of the conflicting evidence. See *In re Marriage of Strang-Reynolds-Conour* (1991), 218 Ill. App. 3d 467, 468.

One author has suggested that in resolving questions of this type, courts should be guided by concepts of sharing and mutual dependence. (Gregory, *Marital Property in Illinois: The Complexities Wrought by the Presumption of Gift, Transmutation, and Commingling*, 1982 S. Ill. U. L.J. 159, 182 (hereafter Gregory).) Thus, "[w]hen the parties have led their lives with great independence, and when there has been little reliance on long-term assumptions about the nature of the marriage or its continuation, the parties' own lifestyles demonstrate best that there has been no sharing." (Gregory, 1982 S. Ill. U. L.J. at 182.) In the instant case, the parties' lifestyles show that there was little "sharing." The parties maintained their own careers and their own bank accounts. The court found that "the relationship between these two parties sorely tests the outer limits" of the concept of marriage under the Act. The court did find that the parties each made contributions to the marital home and respondent's business, which it found to be marital assets. Such evidence was lacking, however, with regard to the Rose Farm Road property. This evidence, or lack thereof, further reinforces our conclusion that the trial court did not err in finding that the Rose Farm Road residence was petitioner's nonmarital property.

The second issue which respondent raises concerns the court's valuation of Hunter's Welding. Respondent raises four subissues under this general heading. Respondent contends that Joan Baurer was not properly qualified as an expert witness, that her testimony should have been stricken as based upon hearsay, that the court "erred in assuming that the equipment at Hunter's Welding is worth $50,000," and that, because of these various infirmities in petitioner's evidence, the court was required to accept respondent's evidence as the only reliable evidence of the value of the business.

■ Respondent first contends that the court erred in qualifying Joan Baurer as an expert in the valuation of small businesses. He contends that "her only expertise in evaluating a small business comes

from one seminar and two or three other occasions when she placed a value on businesses in McHenry County" and that she "has no experience or training in evaluating welding and machine repair equipment."

Respondent acknowledges that the trial court has broad discretion to determine whether a witness has been qualified as an expert. (*Black v. Iovino* (1991), 219 Ill. App. 3d 378, 388; *Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 729.) To lay a proper foundation for expert testimony, the party offering his testimony must show that the expert has some special knowledge or experience in the area about which he expresses his opinion. (*Robinson*, 114 Ill. App. 3d at 729.) We believe respondent seeks to define the relevant field of expertise much too narrowly. Respondent focuses only on Baurer's experience in evaluating small businesses in McHenry County and welding equipment. Baurer, however, testified that she evaluates businesses "constantly" in her work as a financial planner. Specifically, she has evaluated 15 to 20 small businesses in northern Illinois, including one welding business. The fact that only two or three of these businesses were located in McHenry County is not significant absent evidence that special factors make businesses in McHenry County fundamentally different from those in other northern Illinois counties.

Similarly, Baurer's relative lack of experience concerning welding equipment did not render her an incompetent witness. Respondent has failed to demonstrate that welding equipment is so fundamentally different from that used in other types of small businesses as to render Baurer's opinion concerning this equipment worthless. At any rate, Baurer stated that she relied primarily on the income method of valuation and that the value of the equipment was relatively unimportant in her appraisal of the business. Moreover, respondent's counsel thoroughly cross-examined Baurer concerning her qualifications and experience. The court was aware of any deficiencies in this regard.

■ Respondent next contends that Baurer's entire testimony should have been stricken because it was based on hearsay. This argument is based entirely on Baurer's statement that LeRoy Mueller and his brother helped her evaluate the equipment of the business. Other than a single case, which refers generally to the hearsay rule, respondent does not cite any authority for the proposition that this testimony was improper. Thus, this argument could be considered waived for failure to cite relevant authority. 134 Ill. 2d R. 341(e)(7).

To the extent that an expert witness is not personally familiar with the facts of the case, her opinion will necessarily be based upon

information given to her by someone else. An expert witness may base his opinion on data not in evidence, including the opinions of others. The critical question is whether experts in the field ordinarily rely on such data in formulating their opinions. Cross-examination is the appropriate method to elicit the basis of the expert's opinion. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 482.) In the instant case, respondent does not contend that the information which Baurer relied on, including the opinions of the Mueller brothers, is not of the type generally used by experts in her field. Based on the record before us, we cannot conclude that the trial court abused its discretion in refusing to strike Baurer's testimony.

Even if the court did err in admitting Baurer's testimony based on the Muellers' opinions, such error was harmless. Once again, respondent's counsel thoroughly cross-examined Baurer concerning the basis of her opinion. Moreover, Baurer stated that her conclusions were based primarily on the business' financial history and future earnings potential. She stated that even if the value of the equipment were shown to be dramatically different, it would not alter her opinion very much.

Respondent makes much of the fact that the Muellers are from Algonquin and allegedly were easily available to petitioner. Presumably, however, if respondent felt their testimony would have been favorable to him, he could also have called the Muellers to testify. In any event, respondent fully explored the basis of Baurer's opinions on cross-examination, and the court was fully aware of it. In denying respondent's motion to strike Baurer's testimony, the court stated that the basis of her opinions would go only to the weight of the evidence, not its admissibility. We hold that the court did not abuse its discretion in accepting Baurer's testimony.

■ Respondent next argues, without citation of authority, that the court erred in concluding that the equipment at Hunter's Welding is worth $50,000. Generally, an argument not supported by citation of relevant authority is deemed waived. (134 Ill. 2d R. 341(e)(7).) We therefore find that respondent has waived consideration of this issue.

Even if we were to consider the merits of this argument, we would find it unfounded. Respondent's argument is based on a single statement in the trial court's memorandum, taken out of context. The court first referred to Powell's testimony that to start anew a business such as Hunter's Welding would require $50,000. The court then stated, "If that information is then considered in conjunction with the testimony presented about the actual purchase price of the equipment, it is apparent that such a business start-up would necessarily involve

used equipment." From this, respondent concludes that the court valued the equipment of the business at $50,000. There is no indication in the court's opinion that this is what it did.

The court did not fully state the basis for its $55,000 valuation. If it assumed that the used equipment was worth $50,000, then only $5,000 would be left for goodwill and all the other factors. Powell clearly testified that the equipment of Hunter's Welding in its current condition was worth no more than $17,000. Absent some clearer indication, we will not assume that the trial court misinterpreted the evidence.

■ Respondent's final contention is that the court erred in not accepting respondent's own estimate of the value of Hunter's Welding. This argument, however, assumes that Baurer's testimony must be completely disregarded because Baurer was an incompetent witness. As we have already held that Baurer's testimony was competent, this argument must fail as well.

The valuation of marital assets is a matter for the trial court, and as long as the court's valuation is within the range testified to by the experts it ordinarily will not be disturbed on appeal. (*In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 260; *In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 181.) In the instant case, the expert opinions of the value of Hunter's Welding ranged from approximately $8,000 to $90,000. The court's valuation of $55,000 was well within that range. We note that this value was closer to respondent's own opinion of $32,000 to $37,000 than to Baurer's figure of $90,000. To the extent that the court did rely on Baurer's testimony, the court was aware, through cross-examination, of any deficiencies in her qualifications or in the valuation process.

All respondent's arguments are apparently based on the idea that the value of the business must be predicated solely on the value of the equipment. There are several methods of valuing a small business, including the income and replacement cost methods. Baurer testified that her opinion was based primarily on the income method. While not stating specifically what method it used, the court obviously considered factors beyond the mere replacement cost of the equipment. Respondent himself testified that his opinion of the value of the business was based on the value of the equipment plus a certain amount for goodwill. Respondent's arguments apparently proceed from the premise that the court was required to use the replacement-cost method.

Here, the trial court's valuation was well within the range established by the expert testimony, and its valuation was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

INGLIS and McLAREN, JJ., concur.