PROGRESSIVE LAND DEVELOPERS, INC., Plaintiff-Appellee and Cross-Appellant, v. EXCHANGE NATIONAL BANK OF CHICAGO, n/k/a La Salle National Bank, Defendant-Appellant and Cross-Appellee.

First District (4th Division)   No. 1—93—1437

Opinion filed September 29, 1994.

Schwartz, Cooper, Kolb & Gaynor, Chartered, of Chicago (Eric S. Rein and Franklin S. Schwerin, of counsel), for appellant.

Cook Partners Law Offices, Ltd., of Chicago (Rufus Cook and Barbara J. Revak, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Plaintiff, Progressive Land Developers, Inc., filed suit against defendant, Exchange National Bank, alleging that defendant breached its fiduciary duty by improperly conveying real estate properties held in trust for plaintiff. Following a bench trial, the court found in favor of plaintiff and awarded damages of $930,815.65. Defendant appeals and plaintiff cross-appeals, challenging aspects of the damage award. Defendant also contends that (1) the court erred in determining that it breached its fiduciary duty; and (2) the court improperly found that defendant was bound by the determination in a prior probate proceeding as to the authority to control the trust property.

BACKGROUND

This is another in a series of cases arising from the misappropriation of assets belonging to Elijah Muhammad, the former leader of the Nation of Islam (Nation), by members of the Nation after Muhammad's death. During his lifetime, Muhammad and others affiliated with the Nation established plaintiff, Progressive Land Developers, Inc., to hold title to certain real estate properties. In August of 1972, plaintiff transferred 10 of these properties to defendant as trustee under trust No. 26950. After Muhammad's death in 1975, persons affiliated with the Nation, purporting to be newly elected officers and directors of plaintiff, assumed control of plaintiff

and directed defendant to sell each of the trust properties. In January of 1983, several of Muhammad's children (hereinafter the Estate) initiated citation proceedings to recover funds and property of Muhammad, including assets of Progressive, allegedly misappropriated by members of the Nation (hereinafter probate proceedings). The probate court determined, *inter alia*, that Muhammad was the sole rightful owner of plaintiff at the time of the conveyances and that the assumption of control of plaintiff by the Nation was improper, as were the directions to convey the property in trust No. 26950. The case at bar arose from a subsequent suit in which plaintiff charged that defendant breached its fiduciary duty by following the directions to convey the trust property.

## THE PRIOR PROBATE PROCEEDINGS

A brief review of the probate proceedings is necessary to an understanding of the issues in this case. On January 11, 1983, the Estate filed the "Administrator's First Petition for Recovery Citation" against, in relevant part, Edward D. Mustafaa, Matthew Hamidullah, Hafeezah Bahar, Syid Muhammad, and Muhammad's Mosque No. 2, Inc., a corporation which administers the Nation. Count I of the citation sought to recover shares of Progressive stock alleged to be the sole property of Muhammad and the Estate. Count II was a "Recovery Citation in the Nature of a Stockholder's Derivative Suit," filed on behalf of the Estate and Progressive, which sought to set aside conveyances improperly made by respondents after Muhammad's death and to recover damages on behalf of the Estate and Progressive.

Following a hearing, the probate court awarded damages to the Estate in the amount of $12,975,907.50. The court concluded, *inter alia*, that Progressive was formed predominantly with funds belonging to Muhammad, and that the transfers and issuances of its stock by respondents after Muhammad's death were improper and void. The court further found that after Muhammad's death, the respondents illegally seized control of Progressive's books and records, appointed new directors and officers, and proceeded through the new directors and officers to sell "substantial assets" belonging to Progressive, retaining the proceeds to satisfy their own needs as opposed to those of Progressive or the Estate. Regarding the 10 properties held in trust No. 26950, the court held that all transfers or conveyances after Muhammad's death were unauthorized.

## THE SUIT AGAINST DEFENDANT

The trust at issue was executed on August 24, 1972. The trust

agreement authorized defendant to deal with the trust properties only under the joint written direction of plaintiff's president, Raymond Sharrieff, and secretary, Abass Rassoull, or the individual direction of Muhammad, the board chairman. The trust exempted defendant from the responsibility to inquire into the propriety of any such direction. Defendant was subsequently tendered a certified copy of a resolution reflecting the action of plaintiff's directors in executing the trust. The resolution empowered defendant to convey title and deliver deeds to the trust property on the direction of any two of the officers Sharrieff, Rassoull, or Muhammad, or upon the instruction of Muhammad individually. It further authorized plaintiff's secretary to tender to defendant certified copies of future board resolutions, and directed defendant " 'to reply [sic] upon such certification *** until it is formally advised of any changes therein by a subsequent certification under the corporate seal.' " In September 1972, plaintiff assigned defendant the beneficial interest of trust No. 26950 as collateral security for a loan.

On February 25, 1975, Muhammad died intestate, and a probate estate was subsequently opened in the circuit court. About June 14, 1979, the Estate served defendant and other respondents with a citation to appear for examination concerning property believed to belong to Muhammad. The citation petition provided as follows:

"That Petitioners are informed and believe *** that each of the [respondents] have in their possession or control cash, cash items, safe deposit boxes, personal property, account balances, records, and/or papers belonging to Decedent at the time of his death; and/or have information or knowledge needed by the Estate for the recovery of such cash or property of the Estate ***[.]
* * *
Wherefore, Petitioners pray that CITATIONS issue as to each of the above described persons and/or entities *** requiring their Appearance before the Court for such hearing as shall be authorized by law and for the entry of such Order or Orders with respect thereto as shall be authorized by law and consistent with the evidence adduced at such hearings."

On June 29, 1979, defendant received correspondence from counsel for the Estate, Julian B. Wilkins, explaining that the proceedings were an effort by the Estate to determine whether it had located all assets belonging to Muhammad at his death. According to Wilkins, the Estate believed certain accounts "controlled by Muhammad," either solely, jointly, or in other names, were actually comprised of Muhammad's own assets. Wilkins listed plaintiff and two other entities as holders of Muhammad's accounts. On August 6,

1979, Martin Edwards, defendant's land trust specialist, acknowledged receipt of the citation and furnished the requested documentation to the court.

On August 20, 1979, defendant received a resolution bearing plaintiff's corporate seal which purported to transfer the power of direction over the trust property to two new officers, named as Wallace D. Muhammad and Edward Mustafaa. The document reiterated language from the resolution originally establishing the trust, which designated plaintiff as the beneficial owner of the property. The new resolution contained no reference to the document of September 1972 which had transferred the beneficial interest to defendant.

Thereafter, beginning August 20, 1979, through January of 1981, defendant received instructions to convey each of the 10 trust properties. On August 20, 1979, and September 13, 1979, while the citation proceeding was pending, defendant received directions from Wallace Muhammad and Mustafaa to convey two of the trust properties to specified third parties and to forward proceeds to plaintiff as beneficiary. Defendant complied with these instructions and tendered the sale proceeds to plaintiff's attorney, Roland Stewart, who turned them over to Mustafaa.

On September 13, 1979, defendant, having produced the trust file in accordance with the Estate's citation, was dismissed from the citation proceedings.

On November 6, 1979, Stewart delivered a document directing defendant to convey a third trust property to specified grantees and pay plaintiff the proceeds. On or about December 28, 1979, defendant received a document entitled "unanimous written consent," purporting to ratify all actions taken on plaintiff's behalf in the past year and to identify a new group of officers, including Matthew Hamidullah, Syid Muhammad, Hafeezah Bahar, and Mustafaa. The resolution directed defendant to act on the written signature of any two officers. Stewart testified that, at that time, it was his understanding that these individuals were duly elected officers of plaintiff.

Between March 24, 1980, and January 12, 1981, at the direction of Hamidullah and Mustafaa, Stewart delivered to defendant instructions to convey the seven remaining trust properties and to pay the proceeds to plaintiff. On each occasion, a proceeds letter was issued to the purchaser and the proceeds check delivered to Mustafaa.

At trial, both parties presented expert testimony regarding the propriety of defendant's reliance on the directions beginning in August 1979. On plaintiff's behalf, Michael J. Hamblet testified that the custom and practice of the trust business dictated that defendant

should have treated trust No. 26950 as a "marked file" upon receiving the citation petition and Wilkins' follow-up letter. Hamblet testified that the language of these documents placed defendant on notice that the matter was under dispute in probate court and that defendant should have refrained from taking any further action on the trust without a court order or other evidence that the dispute had been resolved. Hamblet further testified that the corporate resolution executed August 20, 1979, and the "unanimous written consent" of December 28, 1979, contained certain facial irregularities which rendered them insufficient to constitute proper change of direction notices.

Defendant's expert, Henry Kenoe, testified that the purported resolutions of August 20, 1979, and December 28, 1979, were sufficient under industry standards to effect a valid change in power of direction. He further testified that defendant acted with reasonable prudence in accepting and acting upon the directions to convey, especially because the proceeds of the sale were to go to the beneficiary. With regard to the citation documents, Kenoe initially testified that they merely communicated that an inquiry was being made concerning Muhammad's assets and mandated no further action by the bank; however, when asked by the court whether a reasonably prudent trust administrator, having just tendered files to the probate court in a citation proceeding involving trust assets, would have any duty to notify the court of subsequent directions to convey trust property, Kehoe responded that he would have advised the bank to do so.

On January 23, 1992, the trial court concluded that defendant breached its fiduciary duty by blindly adhering to the directions to convey. In determining damages, the judge observed that plaintiff was entitled to the present value of the transferred property, or $1,967,500; however, finding that plaintiff had received the benefit of the illicit sale proceeds, the judge deducted this amount, or over $1,036,684, from the damage award. The court thus awarded plaintiff the balance of over $930,816. The instant appeal followed.

We first address the question of whether defendant breached its fiduciary duty by conveying the 10 trust properties. Defendant maintains it merely complied with the instruction of designated officers and directors in facially valid corporate resolutions, and that it had no reason to suspect that there was any dispute as to the ownership of the trust property.

■ In Illinois, land trusts differ from conventional trusts in that while the trustee holds legal title to the property, the beneficiary retains full management powers. (*In re Kress Road Partnership* (N.D. Ill. 1991), 134 Bankr. 292, 297; *Slovick v. All American Bank* (1987),

163 Ill. App. 3d 741, 516 N.E.2d 947.) Many of the land trustee's duties, such as dealing with title, management, and control of the property, are subject to the beneficiary's direction; for this reason, it has been recognized that a land trustee does not owe the beneficiary all the fiduciary duties of a trustee in a conventional trust. (See *Robinson v. Chicago National Bank* (1961), 32 Ill. App. 2d 55, 176 N.E.2d 659; *Volini v. Dubas* (1989), 190 Ill. App. 3d 954, 547 N.E.2d 665.) Nonetheless, some fiduciary obligations remain (*Slovick*, 163 Ill. App. 3d 741, 516 N.E.2d 947), and a land trustee may be liable where it acts negligently or imprudently in the conveyance of trust funds or property. (See *Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 369 N.E.2d 1262; *Lake City Corp. v. Michigan Avenue National Bank* (1975), 33 Ill. App. 3d 100, 337 N.E.2d 251.) In particular, it is held that where a land trustee knows or should know that a person exercising the power of direction over trust property is doing so illicitly, the trustee should refuse to act or it will be subject to liability for breach. (*In re Grabill Corp.* (N.D. Ill. 1990), 121 Bankr. 983, 999-1000; see generally Restatement (Second) of Trusts § 205, Comment *c*, at 459 (1959).) This court adopts that reasoning.

In the case at bar, the evidence sufficiently demonstrated that defendant acted negligently in conveying the trust property and that it breached its fiduciary duty to plaintiff. The citation notice served upon defendant on June 14, 1979, communicated the Estate's belief that defendant as well as Progressive, the settlor, possessed property which belonged to Muhammad at his death, or information needed for the recovery of such property. Wilkins' follow-up correspondence further advised that defendant may have had "accounts" which, though in Muhammad's name or other names, actually consisted solely of Muhammad's assets. The letter listed Progressive as one account on which Muhammad "was one of the drawers." Yet shortly after receiving this notice, defendant accepted instructions of new officers, apparently without verifying the status of their relationship to Muhammad or the Estate, and conveyed all the property out of the trust. According to plaintiff's expert Hamblet, the citation documents and Wilkins' correspondence were sufficient to place a reasonably prudent trustee on notice of a dispute regarding the trust assets, and that upon receipt of the documents, defendant should have refrained from taking any further action with regard to the trust property until it obtained court instruction. Defendant's own expert also acknowledged that this was the advisable course of action. Hamblet testified that the resolutions purporting to change the power of direction were also of questionable effect, because they normally

would be accompanied by a certificate of incumbency verifying the status of each newly elected officer.

■ Defendant argues that the citation proceedings were insufficient to place it on notice of an ownership dispute because they were merely discovery as opposed to recovery proceedings. We do not view the citation notice so restrictively. The prayer for relief does not specify discovery proceedings but instead appears deliberately broad, seeking such order or orders as were consistent with the evidence adduced. Additionally, the citation notice expressly desired information needed for the "recovery" of Muhammad's former assets. Although defendant places much emphasis on the fact that plaintiff had not requested a jury, which it had the option of doing in a case involving the determination of property rights (see Ill. Rev. Stat. 1989, ch. 110¹/₂, par. 16—3), we do not view this as controlling.

The next issues on appeal turn on damages. At trial, both sides presented expert testimony as to the value of the property conveyed from the trust. Defendant's expert, McCann, placed the aggregate value of the property at $1,967,500, as of the time of trial. The court adopted McCann's assessment and then subtracted about $1,036,684, finding that this reflected sale proceeds which were properly paid to Progressive. The court then awarded the balance of $930,816 as damages.

Defendant first argues that the court erred in awarding damages based upon the appreciated value of the trust properties, contending damages should have been limited to the value of the properties at the time of the illicit sales in 1979 through 1981.

■ It is well established that the determination of damages by a trial court will not be set aside unless it is manifestly erroneous. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 148-49, 281 N.E.2d 323; *First National Bank & Trust Co. v. J.P. Schermerhorn & Co.* (1989), 192 Ill. App. 3d 1057, 1062, 549 N.E.2d 862.) Absolute certainty as to damages is not required; all that is necessary is that there be an adequate basis in the record for the court's determination. *Schatz,* 51 Ill. 2d at 147.

■ When a trustee breaches a trust agreement, whether wilfully, negligently, or by oversight, he is liable for any loss to the estate resulting from the breach and must place the beneficiaries in the position they would have held had the breach not occurred. (*Stuart,* 68 Ill. 2d at 526; *Parish v. Parish* (1963), 29 Ill. 2d 141, 149, 193 N.E.2d 761; see also *In re Guardianship of Connor* (1988), 170 Ill. App. 3d 759, 525 N.E.2d 214.) Specifically, a trustee in violation of the trust is chargeable with (1) any loss or depreciation in value of the trust estate as a result of the breach; or (2) any profit made by him as a

result of the breach; or (3) any profit which would have accrued to the trust estate had there been no breach of trust. (*Parish*, 29 Ill. 2d at 149; Restatement (Second) of Trusts § 205 (1959).) Where a trustee makes a negligent transfer of trust property, the beneficiary may elect to collect the present value of the property plus any income he could have received from the property after the breach.

■ In the case at bar, McCann established the values of the properties at the time of the respective illicit sales and their appreciated values at the time of trial. The trial court determined that his valuation of appreciated values was credible, and we find no basis to disturb the court's decision.

In support of its argument that appreciated values were not the proper measure of damages, defendant relies upon *Hopkins v. Loeber* (1947), 332 Ill. App. 140, 74 N.E.2d 39, and *Estate of Talbot* (1956), 141 Cal. App. 2d 309, 296 P.2d 848. These cases hold that where the trustee imprudently exercises his power of sale under the trust agreement, but does not benefit from his conduct and is not guilty of fraud, he is liable only for the trust's loss in value at the time of the breach. These cases are distinguishable from the instant case, because the trustees in those cases were given broad discretion in dealing with the property and were under no obligation to retain it. In this case, defendant had no discretion to sell except upon the valid direction of plaintiff, which it neglected to obtain.

Defendant further contends that appreciation damages were improper because there was evidence that the properties were substantially rehabilitated after the conveyances. Although there is evidence that certain of the properties underwent some rehabilitation, there was no evidence as to what was done, when it was done, or its value. Thus, this fact alone is insufficient to overturn the trial court's damage assessment.

■ On cross-appeal, plaintiff argues that the court erred in deducting from the damage award the sale proceeds from the illicit conveyances, or $1,036,684, finding that the funds had enured to plaintiff's benefit. Plaintiff contends that the court was bound by the probate court's alleged finding that these proceeds were retained and used by the probate respondents for their own purposes rather than those of plaintiff or the Estate.

Initially, we note that plaintiff has neither specified a legal basis for its argument nor referred us to any case in support of it. The supreme court rules require that each argument on appeal be supported by applicable case law and citations to the record, or it will be deemed waived. (134 Ill. 2d Rules 341(e), (f).) Even if not waived, however, plaintiff's argument is without merit.

Under the doctrine of collateral estoppel, the prior adjudication of a factual issue by a court of competent jurisdiction bars relitigation of that issue in a subsequent proceeding; however, this applies only if it is clear the issue was conclusively and fairly decided in the prior proceeding. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959; *Case Prestressing Corp. v. Chicago College of Osteopathic Medicine* (1983), 118 Ill. App. 3d 782, 455 N.E.2d 811.) If uncertainty exists because more than one distinct factual issue was presented in the prior case, estoppel will not be applied. *Case Prestressing*, 118 Ill. App. 3d at 785.

We must point out that this court was not provided with the record of the complex case before the probate court. Examining that court's judgment, however, we cannot conclude that the disposition of the sale proceeds from the particular trust at issue was fully litigated or decided. The judgment concludes that the respondents misappropriated a "substantial" portion of plaintiff's total funds and assets; however, there were numerous other assets at stake in that proceeding apart from those in trust No. 26950, and it is by no means clear that the court was referring to the funds from those particular properties. Further, although the court ruled that the respondents' directions to convey were improper, there was no specific mention of what became of the sale proceeds and apparently no evidence produced as to the amount of those proceeds. Thus, we cannot find that the issue was raised or determined in a manner fair to defendants in the case at bar.

■ Plaintiff next argues that the court erred in not awarding it lost profits and income it could have earned on the property.

Although, theoretically, lost income damages may have been appropriate, it was incumbent upon plaintiff to prove them to a reasonable degree of certainty. Plaintiff concedes that the only proof as to lost income was the testimony of its expert witness, Jackson. The trial court, however, specifically ruled that Jackson's testimony as to lost profits was incredible. The court noted that Jackson was unable to specify any of the properties he used for his comparison analysis, nor could he testify to the actual performance of any of the properties at issue. Our review of the record supports the trial court's conclusion, and plaintiff's argument is thus unavailing.

Finally, plaintiff argues that as an alternative to lost income, the court should have awarded it prejudgment interest at the prime rate. As support for this proposition, plaintiff points to defendant's fiduciary violation and "fraud upon the probate court."

■ Initially, we note that plaintiff's brief is peppered with allegations of defendant's fraud in purposefully failing to alert the

probate court, in the citation proceedings initiated on June 14, 1979, of the suspicious transfer directives. However, the trial court made no determination of such intentional misconduct and we find no basis for such a finding in the record. Thus, plaintiff's allegations of fraud will be disregarded.

■ Prejudgment interest is proper where authorized by statute, agreement of the parties, or in cases where warranted by equitable considerations. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 535 N.E.2d 876.) If it does not comport with justice, interest may be disallowed. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 332, 410 N.E.2d 12.) In cases involving a breach of fiduciary duty, the rationale behind an award of interest is to make the injured party whole by forcing the fiduciary to account for profits gained from his use of the injured party's funds. (*Wernick*, 127 Ill. 2d at 87; see also *In re Marriage of Pitulla* (1990), 202 Ill. App. 3d 103, 559 N.E.2d 819.) Whether such equitable circumstances exist is a question of fact lying within the sound discretion of the trial court. *Wernick*, 127 Ill. 2d at 87.

■ In the case at bar, there is no basis for reversal on this point. Although defendant's actions were imprudent, there was no finding that it intentionally deceived plaintiff. Moreover, unlike the cases upon which plaintiff relies, there was no evidence that defendant derived any financial benefit whatsoever from the improper sales. Indeed, the trial court determined that it was plaintiff who retained the sale proceeds. Accordingly, plaintiff's argument is without merit.

■ Last, defendant contends that the court, "apparently" under the doctrine of collateral estoppel, improperly bound it to the probate court's determination as to the ownership of Progressive and the authority to control the property in trust No. 26950. Defendant maintains that this was improper because defendant was neither a party to the probate proceeding nor in privity with one, and because the issues there were different than those before the court in the instant case.

As indicated previously, collateral estoppel precludes the relitigation of a factual issue in a subsequent proceeding, as long as three circumstances exist: (1) the issue decided in the prior action was identical to that alleged to be barred in the present action; (2) there was a final judgment on the merits in the prior action; and (3) the party against whom estoppel is asserted was a party in the prior action or in privity with a party. (*YMCA*, 101 Ill. 2d 246, 461 N.E.2d 959; *Johnson v. Nationwide Business Forms, Inc.* (1981), 103 Ill. App. 3d 631, 633, 431 N.E.2d 1096.) "Privity" expresses the idea that in certain circumstances and as to certain matters, "persons who are not parties to an action but who are connected with it in their

interests are affected by the judgment with reference to [those interests], as if they were parties." (Restatement of Judgments § 83, Comment *a*, at 389 (1942).) Stated otherwise, a nonparty is bound by the prior judgment if his own interests were so closely aligned to a party's interests that the party was his virtual representative. *People ex rel. Burris v. Progressive Land Developers, Inc.* (1992), 151 Ill. 2d 285, 296, 602 N.E.2d 820, citing *Johnson*, 103 Ill. App. 3d at 634.

Defendant argues that the issues in the instant case differed from those before the probate court and collateral estoppel cannot apply. Specifically, while the issue in the probate court was whether the purported officers were properly elected and thus authorized to direct trust operations, the issue here was whether defendant properly acted based upon the documents presented to it by those officers. Defendant's contention is misplaced.

Application of collateral estoppel does not require that the two causes of action be identical in subject matter; rather, the doctrine will bar only the issue or issues actually decided in the prior action. (*YMCA*, 101 Ill. 2d 246, 461 N.E.2d 959.) In the case at bar, the probate judgment was conclusive only as to the question of the ownership and control of Progressive, and hence the power of direction over trust property. The primary issue in this action, which was the reasonableness of defendant's reliance upon the documents received from the probate respondents, was fully litigated before the trial court.

It should be noted that, while defendant challenges the application of the probate judgment against it, it apparently never placed in issue any question of actual authority to control the trust property; rather, its position in the trial court was that it justifiably relied upon the documents it received as conveying apparent authority to direct the transfers.

Nonetheless, we conclude that the court was correct in binding defendant to the probate court's determination of the rightful ownership and control of Progressive. The respondents in that proceeding, including Wallace Muhammad, Mustafaa, Hamidullah, Bahar, and Syid Muhammad, maintained that the Nation was the sole shareholder of plaintiff and that it controlled its assets. (See *People ex rel. Hartigan v. Progressive Land Developers, Inc.* (1991), 216 Ill. App. 3d 73, 77-78, 576 N.E.2d 214.) This was the precise issue giving rise to the claim against defendant in the instant case. Further, defendant's interest in the ownership of Progressive extended solely to the question of whether the respondents, who directed the transfers at issue, had authority to do so. This was so intertwined with the probate respondents' greater claim of ownership that it

rendered them defendant's virtual representatives in the probate case. The fact that the respondents' argument was rejected is alone insufficient to show that defendant's interests were not adequately represented. *Progressive Land Developers*, 151 Ill. 2d at 297.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and THEIS, JJ., concur.