669 N.E.2d 687 (1996)
283 Ill. App.3d 26
218 Ill.Dec. 544
In re MARRIAGE OF Barbara BLINDERMAN, f/k/a Barbara Reib, Petitioner-Appellee, and
William Reib, Respondent-Appellant.
No. 1-94-2557.
Appellate Court of Illinois, First District, Second Division.
August 13, 1996.
*689 Angelo Ruggiero, Chicago, for appellant.
Zaban, Jacobs and Mayer, Chicago (Marc S. Mayer, of counsel), for appellee.
Presiding Justice HARTMAN delivered the opinion of the court:
This is the second appeal involving these parties. See In re Marriage of Reib, 114 Ill.App.3d 993, 70 Ill.Dec. 572, 449 N.E.2d 919 (1983) (Reib). Following remand, the circuit court valued Reib and Reib, Inc. (R & R), respondent William's company, at $483,000 and awarded petitioner Barbara one-half of that amount plus prejudgment interest. The court subsequently granted Barbara attorneys' and accountant's fees. Respondent appeals, contending the circuit court abused its discretion in (1) considering the testimony of petitioner's expert, (2) granting attorneys' and accountant's fees, (3) evaluating respondent's company, R & R, and (4) allowing prejudgment interest. Respondent also contends the court exceeded the mandate of the appellate court in hearing certain evidence. For reasons which follow, we affirm in part and reverse in part.
Following dissolution of Barbara and William Reib's marriage, Barbara appealed the circuit court's awards of property and maintenance contending the court failed to value the parties' assets properly. The appellate court reversed the circuit court's determination that the parties' marital debts exceeded the value of their marital assets because the court heard no evidence regarding the value of Mainway Financial Corporation (Mainway) and R & R, two of William's companies. Reib, 114 Ill.App.3d at 999-1000, 70 Ill.Dec. 572, 449 N.E.2d 919. R & R was an insurance agency engaged in risk management and was the parent company of Mainway. Mainway had a subsidiary, Main Insurance Company (Main Insurance). On remand, the court conducted an evidentiary hearing and found that R & R had a value of $483,000 as of December 31, 1981. The court thereafter awarded Barbara $241,500, or one-half of R & R's value, plus interest from September 22, 1981, the date of the original circuit court's judgment. The court granted Barbara's petition for attorneys' and accountant's fees.
Lawrence Lipsky, a certified public accountant (CPA) and tax lawyer, testified without objection as Barbara's expert witness. He had testified many times regarding the valuation of companies but never concerning the value of an insurance agency. Lipsky examined the tax records, work papers, cash receipts, corporate disbursements and general ledger of R & R, as well as some records for Mainway. These records were supplied to Lipsky by William's CPA, Leonard Frumm. R & R's 1981 tax return showed a cash balance of $776,611 and indicated that William had been paid $121,208 in commission. William's commission for 1982 was $129,000. Lipsky opined that R & R had a value of $517,099 as of December 31, *690 1981. He arrived at that number by using a four-year (1978-1981) average of R & R's gross revenues and using a multiplier of 1.5, which is the commonly accepted rule of thumb for the price at which an insurance agency is sold. Lipsky relied, in part, upon a publication to ascertain the 1.5 multiplier. He added the net book value of the company and a federal tax refund to determine the final amount.
On cross-examination, Lipsky testified he had never done any accounting work for risk management companies. His knowledge of R & R's business came from the tax returns. He was unsure of the number of clients R & R had. William was R & R's only employee. R & R owed over a million dollars in accounts payable and sustained a loss of $36,727 for 1981. The publication Lipsky relied on for the valuation formula required the net renewal commissions for the most current year but Lipsky used total commissions instead. Lipsky would not have adjusted the multiplier had he known how many accounts R & R had at the time of his evaluation. Lipsky considered the 1.5 multiplier conservative.
Frumm, William's CPA, was called as an adverse witness by Barbara and testified as an expert for William. Frumm prepared tax returns for R & R and Mainway. R & R's 1981 tax return showed a $636,367 investment in Mainway. Mainway reported a loss of $1,577,125 for 1980 and a net operating loss of $7,261,052 from years prior to 1980. Frumm believed R & R had a value of negative $211,105 on December 31, 1981.
According to Frumm, R & R had only one client by the end of 1981. R & R reported a loss for 1981, yet William was paid over $121,000 in commissions. In 1981, R & R earned a gross income of $200,000; traveling and entertainment expenses of $19,000 were paid, as were outside consulting expenses of $34,560 and legal expenses of $19,885. Frumm agreed with Lipsky's gross income figure but disagreed with the 1.5 multiplier. Although R & R owed Mainway $636,367, Frumm did not calculate that amount into R & R's value. Frumm wanted to write the loan off as a bad debt but William persuaded him not to do so until 1983. Frumm admitted that had he written off the loan to Mainway, R & R's value as of December 31, 1981, would have been approximately $425,000.
The circuit court concluded that R & R's value as of December 31, 1981, was $470,000. The court requested each party to submit a memorandum setting forth argument concerning a proper "allocation." Subsequently, the court determined that R & R's value was $483,000. The court set a date to determine how the assets were to be distributed and eventually ordered that Barbara was entitled to $241,500. No transcript of this hearing is contained in the record.
Barbara's counsel thereafter filed a petition for attorneys' fees and costs as well as reimbursement for the fees and costs associated with retaining Lipsky as an expert. William unsuccessfully moved to dismiss Barbara's petition for attorneys' fees.
At the hearing on the petition for attorneys' fees, Barbara's counsel testified that the fee petition reflected his work. The petition also alleged that William was a successful businessman; in the late 1980s, Barbara's counsel had investigated William's financial success. William's tax returns for the last three years were requested but were never received. Barbara testified that she was unable to pay her attorneys' fees and costs. Following the hearing, the court awarded Barbara attorneys' fees and costs of $49,573 and accountant's fees of $8,000. William appeals.

I
William initially contends the circuit court abused its discretion in permitting Lipsky to testify as an expert witness because he had no experience in valuing a company such as R & R.
Illinois Supreme Court Rule 220(a)(1) (repealed effective January 1, 1996) provided:
"An expert is a person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial." 134 Ill.2d R. 220(a)(1).
*691 Failure to object to an expert's qualifications results in a waiver on appeal. See Mundell v. La Pata, 263 Ill.App.3d 28, 33, 200 Ill.Dec. 594, 635 N.E.2d 933 (1994). A reviewing court will consider the issue if it finds plain error; that is an error which is so egregious it deprives the complaining party of a fair trial and substantially impairs the integrity of the judicial process. La Pata, 263 Ill. App.3d at 33-34, 200 Ill.Dec. 594, 635 N.E.2d 933. A circuit court has broad discretion in determining whether a witness has been qualified to testify as an expert. In re Marriage of Hunter, 223 Ill.App.3d 947, 954, 166 Ill.Dec. 242, 585 N.E.2d 1264 (1992).
William failed to object to Lipsky's qualifications and, therefore, has waived the issue on appeal.[1] William contends the issue of waiver is not relevant because this court must determine whether the circuit court abused its discretion in considering Lipsky's testimony. William's argument, however, is directed to Lipsky's qualifications. Accordingly, the issue is waived.
Notwithstanding waiver, the circuit court properly considered Lipsky's testimony. A party seeking to have a witness qualified as an expert must lay a proper foundation showing the expert has some knowledge or experience in the area about which he expresses his opinion. In re Marriage of Hunter, 223 Ill.App.3d at 954, 166 Ill.Dec. 242, 585 N.E.2d 1264. An expert witness' opinion may not be based upon conjecture or speculation. Dyback v. Weber, 114 Ill.2d 232, 244, 102 Ill.Dec. 386, 500 N.E.2d 8 (1986).
William contests Lipsky's qualifications to testify concerning the valuation of R & R; however, this contention is without record support. Lipsky, a CPA since 1949 and a tax lawyer, has testified as to the valuation of companies "quite a number" of times. Although this was the first time he conducted a valuation of an insurance agency, Lipsky reviewed all the work reports and tax documents supplied to him by William's CPA. Lipsky knew what a risk manager was; understood R & R's business generally; relied upon all the documentation supplied to him; used a conservative multiplier; and was aware of the differences between Mainway and Main Insurance, although he treated them similarly for accounting purposes. William contends that Lipsky did not follow the very formula which he relied on; however, the instances in which he did not follow the formula were justified because R & R's tax returns and documentation did not contain all the required numbers. William also asserts Lipsky was unqualified, but William ignores Frumm's acknowledgement that had he written off R & R's debt, R & R's value would have been approximately $425,000, substantially similar to Lipsky's estimate.
The circuit court neither abused its discretion nor committed plain error in considering Lipsky's testimony. See In re Marriage of Hunter, 223 Ill.App.3d 947, 954, 166 Ill.Dec. 242, 585 N.E.2d 1264 (1992).

II
William next argues the circuit court abused its discretion in granting Barbara attorneys' and accountant's fees because (1) the petition was not specific, (2) there was no showing that Barbara was financially unable to pay and that William was financially able to pay, and (3) accountant's fees and costs are not allowed under section 508 of the Illinois Marriage and Dissolution of Marriage Act (the Act). 750 ILCS 5/508 (West 1994).
A spouse seeking an award of attorneys' fees and costs must show financial inability to pay the fees as well as the financial ability of the other spouse to pay them. In re Marriage of Einhorn, 178 Ill.App.3d 212, 221, 127 Ill.Dec. 411, 533 N.E.2d 29 (1988). When awarding fees under the Act, a circuit court must consider the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing or skill of the attorney, and the time and labor involved. In re Marriage of Powers, 252 Ill.App.3d 506, 508, 191 Ill.Dec. 541, 624 N.E.2d 390 (1993). The award of attorneys' fees and the amount to be paid by *692 the parties is within the discretion of the circuit court and will not be disturbed absent a clear showing of an abuse of discretion. Head v. Head, 168 Ill.App.3d 697, 704, 119 Ill.Dec. 549, 523 N.E.2d 17 (1988).
William contends the court abused its discretion because Barbara's counsel testified only in generalities about the time he spent on the case and the petition was not specific. At the hearing on the petition for attorneys' fees, the court required Barbara's counsel to verify the hours set forth in the petition. William's counsel stipulated that the petition would stand as Barbara's counsel's direct testimony and Barbara's counsel could supplement the petition through narrative testimony. William's counsel cross-examined Barbara's attorney about the petition. Prior to conducting the hearing, the court denied William's motion for a continuance and granted Barbara's motion to bar William from testifying because William failed to appear for a deposition and also did not submit his tax returns as requested. William was not present on the day of the hearing.
William contends Barbara's petition for attorneys' fees was inadequate, yet 136 pages of recorded billable hours were attached to the fee petition. The petition also set forth the skills of Barbara's counsel, the amount sought and alleged that the time devoted to the matter was necessary and reasonable in light of the nature and complexity of the matter. The petition further alleged William is a successful businessman and is capable of paying the fees. At the hearing, Barbara's attorney testified that in the late 1980s, he investigated William's finances and determined William had substantial sums of money at his disposal. This information also came, in part, from a previous hearing regarding arrearages on maintenance. The evidence submitted was sufficiently specific to justify the court's award.
William next argues Barbara failed to show her financial inability to pay the fees as well as his financial ability to pay them. Barbara testified, however, that she was unable to pay her counsel's fees. Barbara's 1993 financial statement showed that she had $4,085 in cash, an automobile worth approximately $4,000, a mutual fund with $2,432 and a retirement account with $44,000. Barbara owed $55,000 to her attorney, $8,000 to her accountant, and $31,300 to her husband, Leonard Blinderman. Prior to her retirement at the end of 1992, Barbara earned $28,000 per year. Barbara testified that the present case has been in court for over 10 years and all her attorneys' fees were reasonable. William submits Barbara did not show his financial ability to pay the fees. The record reveals, however, that William refused either to appear for a deposition or to submit tax returns. As a result of William's failure to comply with court orders, he was barred from testifying. William cannot contest Barbara's alleged failure to prove his financial ability to pay her fees where his own conduct contributed to any deficiencies in her proof. The evidence was sufficient to support the circuit court's award of attorneys' fees.
William next contests the circuit court's award of accountant's fees, contending section 508 of the Act does not permit such fees. William does not claim the accountant's fees were unreasonable. Expert's fees, including an accountant's fees, are recoverable under section 508(a) of the Act. In re Marriage of Winton, 216 Ill.App.3d 1084, 1092, 159 Ill.Dec. 933, 576 N.E.2d 856 (1991); Head v. Head, 168 Ill.App.3d 697, 703-04, 119 Ill.Dec. 549, 523 N.E.2d 17 (1988).
The circuit court did not abuse its discretion in awarding Barbara attorneys' and accountant's fees.

III
William next maintains the circuit court abused its discretion in entering a judgment of valuation without considering other marital property as required under section 503 of the Act. 750 ILCS 5/503(d) (West 1994).
William's assertion articulates one sentence of argument, a mere citation to section 503 of the Act and no citation of case law. Failure to support arguments with citation to legal authority in an appellate brief constitutes waiver of that argument. Pyskaty v. Oyama, 266 Ill.App.3d 801, 204 Ill.Dec. 328, 641 N.E.2d 552 (1994). William's brief is in *693 violation of Supreme Court Rule 341(e)(7). 134 Ill.2d R. 341(e)(7). Accordingly, he has waived this claim.
Waiver aside, the record does not support William's claim. After determining that R & R's value as of December 31, 1981, was $470,000, the circuit court requested both parties to submit a memorandum detailing how the property should be distributed. Subsequently, the court found that R & R's value was $483,000 and awarded Barbara one-half of that amount. Neither the parties' memoranda nor a transcript of the court's hearing on how to distribute R & R's value properly is contained in the record.
It is appellant's burden to provide a sufficient record to support a claim of error; absent such a record, a reviewing court will presume that the circuit court's order was in conformity with established legal principles with sufficient factual basis. Foutch v. O'Bryant, 99 Ill.2d 389, 391-92, 76 Ill.Dec. 823, 459 N.E.2d 958 (1984). Any doubts which arise from the incompleteness of the record are to be resolved against the appellant. Foutch, 99 Ill.2d at 392, 76 Ill.Dec. 823, 459 N.E.2d 958. William, as appellant on this issue, bore the burden of providing a sufficient record. Absent a transcript of the hearing on the distribution of the assets, there is no basis upon which to determine whether the circuit court abused its discretion in denying defendant's motion. See Farm Credit Bank v. Schwarm, 251 Ill. App.3d 205, 211, 190 Ill.Dec. 687, 622 N.E.2d 97 (1993). The court's order provides that the cause came "on to be heard on the remand of the above entitled cause, and the Court * * * heard the evidence, testimony of witnesses, and arguments of counsel." It must therefore be presumed that the circuit court's order was in conformity with the law and was properly supported by the evidence. See Mars v. Priester, 205 Ill.App.3d 1060, 1066, 150 Ill.Dec. 850, 563 N.E.2d 977 (1990).
The circuit court did not abuse its discretion in distributing marital assets.

IV
William asserts the circuit court abused its discretion in granting Barbara prejudgment interest because it was not permitted by the Act or by agreement of the parties; the court's equitable jurisdiction was not invoked; and the court made no findings concerning equitable considerations warranting an award of prejudgment interest. Barbara contends the circuit court properly granted prejudgment interest given the equitable considerations of the case.
Although both parties assert the court granted prejudgment interest, the record reveals that the court intended to impose "interest from the date of the original [circuit court] judgment," and denied awarding prejudgment interest. The initial circuit court judgment, however, did not include a money judgment because the court concluded that marital debts exceeded marital assets. This finding was reversed by the Reib court. 114 Ill.App.3d at 999-1000, 70 Ill.Dec. 572, 449 N.E.2d 919. Consequently, the court in the present case essentially granted prejudgment interest without intending to do so.
"Prejudgment interest is proper where authorized by statute, agreement of the parties, or in cases where warranted by equitable considerations." Progressive Land Developers, Inc. v. Exchange National Bank, 266 Ill.App.3d 934, 945, 204 Ill.Dec. 384, 641 N.E.2d 608 (1994). Prejudgment interest must comport with justice, however, and whether equitable considerations exist is a question of fact within the sound discretion of the circuit court. Progressive Land Developers, Inc., 266 Ill.App.3d at 945, 204 Ill.Dec. 384, 641 N.E.2d 608.
Prejudgment interest is not authorized by the Act and the parties did not agree that the prevailing party was entitled to prejudgment interest. Because the court did not intend to award prejudgment interest, the circuit judge did not set forth any equitable considerations to warrant the award of prejudgment interest. The court erred in awarding prejudgment interest where such grant was not intended and the court set forth no reasons justifying the award.
The award of prejudgment interest must be reversed.

*694 V
William next contends the circuit court abused its discretion in admitting certain evidence because it exceeded the appellate court's mandate.
A circuit court must follow the specific directions of the appellate court's mandate to insure that its order is in accord with the decision of the higher court. In re Marriage of Pitulla, 256 Ill.App.3d 84, 88, 195 Ill.Dec. 99, 628 N.E.2d 563 (1993). When a reviewing court remands a case with instructions that are general, however, the circuit court is required to examine the appellate court's opinion and exercise its discretion in determining what further proceedings would be consistent with the opinion on remand. In re Marriage of Sunko, 237 Ill. App.3d 996, 999, 179 Ill.Dec. 197, 606 N.E.2d 29 (1992). The circuit court thus has discretion to hear new evidence when the appellate court's mandate is general in nature. In re Marriage of Sunko, 237 Ill.App.3d at 999, 179 Ill.Dec. 197, 606 N.E.2d 29.
William contends the circuit court exceeded the appellate court's mandate upon reversal in this case because the court was required only to determine the value of R & R as of December 31, 1981; therefore, the court erred in hearing evidence concerning R & R's business affairs after 1981. Upon reversal, the court stated that the circuit court had not been presented with evidence to establish the value of R & R other than the 1979 tax returns and remanded "for a further evidentiary hearing" and "for further proceedings." 114 Ill.App.3d at 1001, 70 Ill. Dec. 572, 449 N.E.2d 919. Accordingly, the circuit court in the present case was confronted with determining the value of R & R as of December 31, 1981. The court conducted a full evidentiary hearing in order to arrive at the proper determination. Although the court heard some evidence about R & R's business after 1981, that evidence was relevant to determining R & R's value in 1981, especially where R & R's debt was not written off until 1983. According to Frumm, William's accountant, writing off the debt in 1981, as he had recommended to William, would have greatly increased the value of R & R. The evidence was therefore relevant.
The circuit court did not exceed the mandate of the appellate court.
For the foregoing reasons, those parts of the circuit court judgment distributing the assets and awarding fees are affirmed and that part granting prejudgment interest is reversed.
Affirmed in part; reversed in part.
SCARIANO and BURKE, JJ., concur.
NOTES
[1] Although William moved to disqualify Lipsky prior to the hearing, William's motion was based upon the delayed responses to his Supreme Court Rule 220 interrogatories. William has not raised that issue on appeal.